(No. 40606.—

THE PEOPLE *ex rel.* Paul E. Hamer *et al.,* Appellants, *vs.* THEODORE JONES, Director of Revenue, *et al.,* Appellees.

*Opinion filed March 28, 1968.*

PAUL E. HAMER, of Northbrook, for appellants.

WILLIAM G. CLARK, Attorney General, of Springfield, (RICHARD E. FRIEDMAN, First Assistant Attorney General, and WILLIAM LEVISON, Special Assistant Attorney General, of counsel,) for appellee, Director of Revenue.

Bruno W. Stanczak, State's Attorney, of Waukegan, (Warren C. Behr, Assistant State's Attorney, of counsel,) for other appellees.

Mr. Justice Kluczynski delivered the opinion of the court:

Plaintiffs brought action in the circuit court of Lake County to compel the county board of review and the Director of the Department of Revenue of the State of Illinois to assess and equalize all property, real and personal, at its full, fair cash value.

Their complaint filed on April 27, 1966, alleged that they are residents and taxpayers of West Deerfield Township in the county of Lake, owning taxable personal and real property; that all residential taxable real property in the township and the county is assessed at approximately 55% of the fair cash value; that taxable personal property therein is assessed at 3% of the valuation of the improvement on the parcel of real property as a basis for determining the valuation of taxable personal property; that taxable motor vehicles within the township and county are assessed at 30% of the wholesale price as shown in the red book price list and that other taxable personal property therein is otherwise ignored and that it is and has been the practice of the assessor of the township as well as other assessors in the county to establish an assessed value of all taxable property at less than full, fair cash value.

They further alleged that section 1 of article IX of the Illinois constitution provides that each person or corporation shall pay a tax in proportion to the value of his or its property; that sections 20 and 21 of the Revenue Act (Ill. Rev. Stat. 1963, chap. 120, pars. 501 and 502) provide that all personal and real property is to be assessed at 100% of its full, fair cash value; that section 108a of the Revenue Act (Ill. Rev. Stat. 1965, chap. 120, par. 589.1) provides that each local board of review or board of appeals, as the case

may be, is required to act as the equalizing authority within each county; that where it finds that both taxable real and personal property is being assessed at less than the full fair cash value, it must increase the aggregate assessment on all taxable property subject to local assessment by 25% in order to eventually produce a ratio of assessed value to full, fair cash value equivalent to 100% and that said board must then report these findings to the Department of Revenue which, upon receipt of the report, is required under section 146 of the Revenue Act (Ill. Rev. Stat. 1965, chap. 120, par. 627) to determine the amount to be added to or deducted from the aggregate reviewed assessment on property subject to local assessment jurisdiction in order to produce a ratio of assessed to full, fair cash value equivalent to 100%.

They charged that the Lake County board of review ascertained for the tax year 1965 that all taxable property within said county, including that of the petitioners, was assessed as described; that the Department of Revenue, based upon the report of the Lake County board of review, ascertained for the tax year 1965 that all taxable real property within Lake County was assessed at approximately 50% of full, fair cash value; that the county of Lake was assigned an equalization factor of 100% and a multiplier of one; that for the tax year 1965 the Department found that the average assessment level in the county was at the approximate assessment level in effect throughout the State of Illinois and that the assessment level throughout the State of Illinois is approximately 50% of the full, fair cash value.

They further contended that the failure to perform the valuation of taxable personal and real property at 100% of its full, fair cash value, as described, violates the equality and uniformity of the taxation provisions of the Illinois constitution; that the constitutional requirement of equality and uniformity prohibits taxation of taxable real property

at grossly higher value than the same kind of property belonging to others in the same tax district; that such an intentional violation of the rule of uniformity is discriminatory and fraudulent; that the constitutional provisions and applicable provisions of the Revenue Act exhibit a very specific purpose and practical plan (equalization) by which all property in the State, not exempt, shall be assessed at 100% of its full, fair cash value; that the assessment of various classes of taxable real and personal property at different percentages than full, fair cash value means that the taxable personal property does not share equally in the cost of government; that the assessment of taxable real and personal property in the manner alleged violates the Illinois constitutional provision (Ill. Const., art. IV, sec. 22) prohibiting the granting of special or exclusive privilege, immunity or franchise, and that the assessment of taxable real and personal property, as alleged, contravenes the fourteenth amendment of the Federal constitution providing for equal protection of the laws.

In count I of their complaint, they prayed that a writ of *mandamus* issue commanding the Director of the Department of Revenue forthwith to modify the aggregate assessment on all taxable property both real and personal for the year 1965 in the State of Illinois in order to produce a ratio of assessed value to full, fair cash value equivalent to 100%.

In count II thereof they prayed for a declaratory judgment that both the State and Federal constitutions as well as the statutes of the State of Illinois require that all taxable property within the State be assessed at its full, fair cash value; that the provisions of the aforesaid declaration should be subsisting, valid and binding upon all public officials performing or otherwise dealing with assessment of taxable property within the State; that the Department of Revenue be directed to advise and instruct all of the supervisors, the

township assessors, the board of review or boards of appeals, as the case may be, of their assessment duties under the constitution and statutes; that the Department of Revenue be directed to take appropriate steps to comply with the applicable statutes prior to the 1966 tax year, and that the court retain jurisdiction to enter any and all orders, *etc.*, necessary to enforce its declaration.

In the third count of the complaint they prayed that, upon a full hearing and determination, those defendants responsible for the assessment of taxable real and personal property within the State of Illinois be enjoined from assessing taxable real estate and personal property at less than its full, fair cash value; that a mandatory injunction issue directing said defendants to assess all taxable real estate and personal property at 100% of its full, fair market value and that during the pendency of the action a temporary injunction issue to enjoin and restrain these defendants from acts and conduct complained of.

On July 22, 1966, the court heard the Director's motion to dismiss filed June 27, 1966, and found that counts I, II and III were insufficient in law to state a cause of action against the Director. It therefore sustained the motion to dismiss as to him on all counts but granted plaintiffs leave to amend counts II and III as to the county board. Following this amendment, plaintiffs made a motion for summary judgment and the board moved to dismiss the amended complaint. The court determined that plaintiffs' factual allegations regarding the tax assessment procedures used in Lake County were true but declared that it could "in the exercise of its judicial discretion deny the request for the writ of *mandamus,* the request for a declaratory judgment and the request for a writ of injunction, where to issue the writs and declarations prayed for would cause chaos and confusion and that to order the Lake County Board of Review and the Department of Revenue to assess

all property in Lake County at its full, fair cash value, as required by statute, would cause chaos and confusion." Accordingly, it ordered that plaintiffs' motion for summary judgment be denied, and the county board's motion for dismissal be granted.

On appeal, plaintiffs contend: "The main issue is whether the trial court ruled correctly in involuntarily dismissing the action. Another issue is whether the trial court abused its discretion in denying the Taxpayer leave to amend the pleadings involving the Director. Other issues are whether the lower court was correct in permitting the Board to file their motion without the prerequisite certificate of counsel and whether the granting of the motion extending the time within which the Director could answer the complaint without notice or the knowledge of the Taxpayers denied the Taxpayers due process of law."

An appreciation of the nature of plaintiffs' action and the issues arising from the dismissal thereof, requires a review, even though briefly, of the history of property taxation in Illinois. The authority to tax property is derived from section 1 of article IX of the Illinois constitution which contains the pronouncement that "The General Assembly shall provide such revenue as may be needful by levying a tax, by valuation, so that every person and corporation shall pay a tax in proportion to the value of his, her or its property—such value to be ascertained by some person or persons, to be elected or appointed in such manner as the General Assembly shall direct, and not otherwise."

The constitution recognizes no difference between real and personal property nor does it make any distinction between tangible and intangible personal property. It allows the legislature wide latitude but requires uniformity. The Revenue Act enacted under this constitutional grant provides that all real and personal property in the State shall be assessed and taxed (Ill. Rev. Stat. 1965, chap. 120, par. 499), except so much thereof as may be exempt by the Act,

and that all such property subject to assessment shall be assessed at its fair cash value. Ill. Rev. Stat. 1965, chap. 120, pars. 500, 501.

This assessment and valuation of taxable property thereunder has created vexatious problems and serious difficulties. Although the law has directed full value assessment, *de facto* debasement has occurred. In 1940, it was noted in *Mobile and Ohio Railroad Co.* v. *State Tax Commission*, 374 Ill. 75 when, on page 76 thereof, the court said: "By virtue of a recognized custom, property, generally, throughout the State of Illinois is now, and for many years last past has been, assessed for taxation at a figure less than its full cash value and this custom has long been recognized by the State Tax Commission." It was conceded that the enforcement of the uniformity requirements of the constitution was an old and continuing problem in the court and with the legislature, and that it could not be truthfully said that either branch of government had ever yet arrived at a satisfactory solution. The court reasoned that the ideal might be beyond attainment through available human agencies, but that the quest could not be abandoned either by the legislature or the judicial branch of government. It concluded with the statement that "The problem is administrative rather than legislative or judicial, and the administrative difficulties have so far proved insurmountable in so far as any exact attainment of the desired end is concerned." 374 Ill. at 83.

In 1959, in *Chicago, Burlington & Quincy Railroad Co.* v. *Dept. of Revenue*, 17 Ill.2d 376, 390, 391, the court held that what was referred to in the *Mobile* case as the "recognized custom" to debase or equalize assessed valuations below full value in order to achieve uniformity with local assessments was no longer permissible. It there announced that: "With the enactment of the Butler amendments to the Revenue Act in 1945, the General Assembly required that all valuations upon which tax rates are extended must be

at full, fair cash value. It is the duty of the Department of Revenue to carry out the statutory mandate. Assessments made by the Department must be at full value (Ill. Rev. Stat. 1955, chap. 120, pars. 502, 561) and local assessments must be equalized by the Department to full value by increasing or reducing the aggregate assessed valuations made in the several counties. Ill. Rev. Stat. 1955, pars. 627, 630."

The manner in which this may be actualized is problematic. We realize our judiciary is restricted by the established principles relating to the division of governmental authority under the constitution and so we must consider the relief requested in plaintiffs' action in light of these restrictions.

Count I of the original complaint prayed that a writ of *mandamus* issue commanding the Director to modify the aggregate assessment of all taxable property in the year 1965, in the State of Illinois. From the record and the complaint itself, it is admitted that the assessment for the 1965 taxes had been completed at the time of the filing of the complaint and all equalization functions had also been concluded. The effect of the relief prayed for by the plaintiffs would be to compel the Director to undo what he has, pursuant to statute, done and to require that he do it in another manner. *Mandamus* is not a writ of right but is awarded only in the exercise of sound judicial discretion in accord with legal principles. It will not issue when it is no longer within the power of the respondent officers to perform the act sought to be enforced. It will not issue where it would create disorder or confusion in the public service. (*People ex rel. Cannella* v. *City of Chicago,* 7 Ill.2d 416.) The issuance of a writ of *mandamus,* as prayed for by these plaintiffs, at a time when taxes have been extended, all valuation and equalization functions have been performed and collection of the taxes is in process would create extreme expense in the public service, chaotic, disastrous disorder and confusion in the collection of the State revenues,

and a great hardship for the taxpayers. Under such circumstances, it is clear that the writ of *mandamus* will not lie and therefore we hold that the trial court did not err in dismissing this count of the complaint.

With respect to count II wherein plaintiffs seek relief under the Declaratory Judgment Act (Ill. Rev. Stat. 1965, chap. 110, par. 57.1), it is imperative to note that while the statute is broad enough to authorize the entry of a declaratory judgment in tax cases, we proceed cautiously in such cases. In *Goodyear Rubber Co.* v. *Tierney,* 411 Ill. 421, 431, it was held that, in any event, relief should not be afforded under this statute in any tax cases which would not merit relief in chancery by injunction. In our opinion, count II was properly dismissed.

In count III plaintiffs sought to enjoin the director and the board from assessing any property at less than full, fair cash value and to assess it at 100% of its full, fair market value and "that during the pendency of the action a temporary injunction issue to enjoin and restrain these defendants from the acts complained of." It is manifest that the issuance of such an injunction, enjoining the assessment of taxable property at less than full, fair cash value, would not be a means of bringing about compliance with the dictates of the Revenue Act but would most disastrously add to the enigma we find under the present procedures and most assuredly cause chaotic disruption to the obtaining of necessary revenues for the operation of the government.

While it might appear where all are assessed on the same ratio there can be no discrimination, discrimination may nevertheless occur between the real property owner and the personal property owner, and this difference may be great enough to be constructively fraudulent. (See *Mobile and Ohio Railroad Co.* v. *State Tax Commission; Chicago, Burlington & Quincy Railroad Co.* v. *Department of Revenue.*) In the instant case, however, the peculiar wording of the general personal property valuation gives no percentage

to full value except in the case of automobiles. It is doubtful whether the automobile assessments are so different as to be constructively fraudulent. Furthermore, the amended complaint merely charged that plaintiffs owned a certain tract of real estate and "certain taxable personal property" without specifying whether the personalty is tangible or intangible or whether an automobile was included in the assessment. It, therefore, lacked specificity and contained no basis indicative of a failure to have the statute applied uniformly. As such, plaintiffs cannot challenge the assessing authorities' failure to assess the fair cash value as required by the statute.

However, on review plaintiffs concede that they do not seek to correct "past wrongs", that is, the alleged improprieties of assessment values determined in the years 1963 and 1965, but, nonetheless, reiterate their demand for compliance with the constitution, statutes and our prior mandates. Their deliberate omission of the period for which they seek such compliance is an evident concession that it must be for the subsequent years, a time to come. They make no allegations that the assessing authorities are improperly assessing for the subsequent years or, based upon any fact, will improperly assess for such subsequent years. Conceding that a mandatory injunction does not lie to correct "past wrongs", it cannot issue to correct "future wrongs" when there are no charges that such "wrongs" will be committed. The dismissal of count III was proper.

We now consider plaintiffs' second issue on appeal; that is, whether the trial court abused its discretion in denying them leave to amend the pleadings relating to the Director.

The only reference to the nature of the amendment offered was that plaintiffs wished to have the complaint directed to the assessment of property for tax purposes for the year 1966 instead of for the year 1965. The Director argues that, therefore, the plaintiffs could not pos-

sibly make any showing, or allege any facts indicating that there would be improper assessments in 1967, at the time their amendment was proposed, and that "if the plaintiffs are or will be aggrieved by improper assessments for 1967, their proper remedy is, immediately at the time the Lake County Board of Review performs its assessing and equalizing function in that year, to bring a writ of *mandamus* directed to that Board." The Director contends that nothing in the suggested amendment properly alleged that 1967 assessments will be fraudent or contrary to law. This court has often held that allowance of an amendment is within the sound discretion of the trial court and the refusal to allow an amendment is not prejudicial error, particularly where the materiality of such amendment is not apparent and where its denial will not work a substantial injustice. See *Bowman* v. *County of Lake,* 29 Ill.2d 268, 281, 282; *Deasey* v. *City of Chicago,* 412 Ill. 151, 156.

The amendment of counts II and III against the board did not create any better right to relief than was contained in the original complaint, and what we have said regarding it applies with equal force to the complaint as amended. It established no legal cause against the board and the judgment of dismissal was proper.

Plaintiffs next contend that granting the Director an extension of time to answer or plead without notice to them was a denial of due process. In *Bemis* v. *Homer,* 145 Ill. 567, 571, cited by plaintiffs, we held: "The fact that the order was made without notice to opposing counsel, and in their absence, entitled them to come in afterward and show, if they could, that the order should not have been made but there is nothing in this record to show that the exercise of the court's discretion in making the order depended upon their presence or notice to them." Similarly, there is nothing in the record or argument here indicating that plaintiffs suffered any harm from the extension of time complained of. Furthermore, plaintiffs approved of a

subsequent extension of time granted the Director, thereby waiving any objection they could have made to the previous extension. We find no denial of due process.

Finally, plaintiffs claim the trial court erred in entertaining the board's motion to dismiss because it was not filed in compliance with our Rule 104 in that it did not have attached a certificate of counsel or other proof that copies had been served on all parties who had appeared. The record indicates that the motion to dismiss was heard after delivery of a copy thereof to plaintiffs' counsel, and that the plaintiffs were not prejudiced thereby since they were given ample opportunity to oppose the motion. Under these circumstances we find that it was within the court's proper realm of discretion to waive strict compliance with the rule regarding the filing of pleadings.

It is our opinion that for the reasons discussed the orders entered by the trial court were proper and should be sustained.

Despite this holding, however, we feel compelled to disclose our awareness of the fact that problems of property tax are a constant source of legislation and where they have been insurmountable the method has been supplemented or abandoned. While it has been pointed out that the complaint here is insufficient, it is a matter of common knowledge, that the property tax, as administered, has lost considerable face. It is far from a perfect, or even satisfactory, solution to the problem of providing revenue on an equitable basis. The property tax method was devised long before the present day complexities of urban living and the increased demands made upon government. The intricacies of the problem do not readily lend themselves to judicial solution.

In this latter regard, we stated in *Hall* v. *Gillins*, 13 Ill.2d 26, at page 32: "The point of greatest concern has been the subject of frequent legislative attention. Further legislative action appears likely, and the likelihood of legislative action has always militated against judicial change."

But, while we may defer to legislative action for a time, we cannot abdicate our responsibilities even though our approach must necessarily be a negative one and chaos may ensue.

The judgment of the circuit court of Lake County is therefore affirmed.

*Judgment affirmed.*