(No. 46533.-

CLARE HARTE, Appellant, v. ROBERT J. LEHNHAUSEN *et al.*, Appellees.

*Opinion filed May 19, 1975.*

William J. Harte, Ltd., and Kevin M. Forde, Ltd., of Chicago (William J. Campbell, Jr., of counsel), for appellant.

William J. Scott, Attorney General, of Chicago (Herbert L. Caplan, Assistant Attorney General, of counsel), for appellees.

MR. CHIEF JUSTICE UNDERWOOD delivered the opinion of the court:

Plaintiff, on her own behalf and for all citizens, taxpayers and taxing bodies in Cook County, filed an amended complaint for declaratory judgment and injunction against the former and present Directors of the Department of Local Government Affairs and the Superintendent of Public Instruction. She sought a recomputation and adjustment of payments to Cook County school districts from the State common school fund for 1969 through 1971. She also sought to enjoin the certification of the 1972 equalization rate (commonly referred to as the "multiplier") for Cook County by the Department of Local Government Affairs and the distribution of State school aid on the basis of that rate. Plaintiff's motion for preliminary injunction was denied, and the circuit court of Cook County subsequently allowed defendants' motion to dismiss the amended complaint. We have allowed plaintiff's motion for direct appeal pursuant to Supreme Court Rule 302(b). 50 Ill.2d R. 302(b).

The case involves the interrelationship of the equalization of assessments of property in the various counties by the Department of Local Government Affairs and the apportionment of school aid from the State common school fund to school districts throughout the State. A brief review of the pertinent statutory provisions is required. The Revenue Act of 1939 provides that except in counties with a population of more than 200,000 which classify real property for purposes of taxation, property is

to be valued for taxation at "fair cash value," which is defined as 50% of actual value. (Ill. Rev. Stat. 1971, ch. 120, pars. 482(24), 501.) The Department of Local Government Affairs is directed by statute to equalize assessments between the counties so that in all counties property will be assessed at its full fair cash value as defined by the Act. (Pars. 612, 627.) To this end, section 149 of the Act provides in part that:

> "The assessments of all property, as returned by the county clerks, shall be equalized by adding to the aggregate assessed value thereof in every county in which the Department may find the valuation to be less than full, fair cash value, such rate per cent as will raise the same to its full, fair cash value *** and by deducting from the aggregate assessed value thereof, in every county or township in which the Department may find the valuation to be more than full, fair cash value, such rate per cent as will reduce the same to its full, fair cash value." (Par. 630.)

The rate so determined by the Department to arrive at such equalization is then certified by the Department to each county clerk, and the equalized valuations resulting from applications of the multiplier to the locally assessed valuations are used by the respective county clerks in extending taxes. Par. 632.

The School Code utilizes equalized assessed valuation in determining a school district's qualification to receive grants from the common school fund. Section 18—8 of the Code contains detailed provisions dealing with the apportionment of various types of State school aid. (Ill. Rev. Stat. 1971, ch. 122, par. 18—8.) During the years in question the section included provisions for school aid "equalization quotas" which, subject to certain percentage increases and other adjustments, are amounts provided by the State to supplement local tax levies to a level of $520 per pupil in average daily attendance. Stated briefly, a school district which levies a sum for educational purposes at least equivalent to a specified percentage of the value of

all its taxable property as equalized or assessed by the Department of Local Government Affairs on the date of the levy is entitled to receive a grant from the common school fund in an amount which, when added to the amount of the levy at the specified minimum percentage, will produce the sum of $520 per pupil in average daily attendance. Accordingly, it is apparent that as a county's equalized assessed valuation becomes larger, the minimum amount which must be levied for educational purposes in order to qualify for State assistance must also increase, with the consequence that the amount received from the common school fund will be correspondingly smaller.

In count I of the amended complaint plaintiff alleged that during the year 1972 the Director of the Department of Local Government Affairs was responsible for the computation, determination and certification of the multipliers for the several counties in the State; defendant Michael J. Bakalis, as Superintendent of Public Instruction of the State, was responsible for the administration of the common school fund and its apportionment among the various school districts in Illinois; that the multipliers determined by the Director were used to compute "total equalized assessed valuation" for purposes of determining the qualification and appropriate share of the common school fund for each school district; that the Director had either intentionally or negligently failed to correctly compute, determine and certify the multiplier for Cook County as provided by statute but had instead intentionally or negligently overstated it as a consequence of which school districts in Cook County, including the Chicago Board of Education, had not received in the past, and would not receive in the future, their correct and lawful distributive shares of the common school fund; that such overstatement resulted in increased taxes for taxpayers in Cook County; and that such conduct was contrary not only to provisions of the Revenue Act requiring uniform and accurate determination of multipliers, but was also

violative of provisions of the State and Federal constitutions guaranteeing equal protection of laws and uniformity of taxation. Plaintiff sought a recomputation, determination and certification of the multipliers for 1970, 1971 and future years and a recomputation of the corrected distributive shares of the common school fund for school districts in Cook County for the years 1969, 1970 and 1971.

Count II contained essentially the same allegations as count I and sought to enjoin the acting Director of the Department of Local Government Affairs from certifying the 1972 multiplier for Cook County and to enjoin the Superintendent of Public Instruction from computing State school aid for Cook County school districts on the basis of equalized assessed valuations determined by use of that multiplier.

Plaintiff's amended complaint was filed on April 2, 1973. The request for preliminary injunction was, over plaintiff's objection, set for hearing on April 9. Between April 2 and April 9 the Department certified the 1972 multiplier, and plaintiff accordingly requested that the court enter an order recalling the multiplier and directing its recomputation.

At the hearing on the motion there was testimony concerning the procedures of the Department of Local Government Affairs in assigning multipliers for the years 1970 through 1972 in the quadrant and nonquadrant counties. Those few counties such as Cook, which are divided into quadrants for assessment purposes, each received an annual adjustment of its multiplier as one quadrant was reassessed each year. Multipliers were determined for all other counties every four years on the basis of the quadrennial assessments until the enactment of Public Act 77—556, approved July 31, 1971 (Laws of 1971, at 1159), which amended several sections of the Revenue Act to provide for annual equalization of all counties. The testimony indicated that the Department

calculated multipliers for each county by use of a formula the nature of which is not clearly shown by the record.

The year 1970 was the quadrennial reassessment year for counties having a commission form of government. In developing tentative multipliers for these counties, the Department first utilized a constant in its formula which, it is said, would have brought the equalized assessed valuations to the 50% level required by statute. However, pursuant to a departmental directive that equalization rates were not to be increased more than 20% over the previous year, a different constant was ultimately arrived at, resulting in equalized assessed valuations at 43.48% of actual value in most of the commission counties. The original constant was used only for Cook, Monroe and Wabash Counties.

A similar situation existed with respect to the determination of 1971 multipliers for the township counties which received their quadrennial reassessment that year. In response to instructions not to increase multipliers by more than 20% over the immediately preceding year, one constant was finally arrived at for most of the township counties and a higher constant for others which resulted in equalization of 45.04% or less of actual value. Only Cook and Lawrence Counties were equalized that year using the original constant in the formula.

On February 21, 1973, the Governor issued a press release announcing that he had ordered multipliers frozen at the current level, and the 1972 multipliers were accordingly certified by the Department at the same level as 1971 rates. The same lack of uniformity among counties conceded by the witnesses to exist with respect to prior years was thus carried forward into the 1972 equalized assessed valuations.

The net result for the years in question is perhaps typified by the year 1971, in which the equalized assessed valuation in Cook County remained at approximately 50% of fair cash values, while such valuations in the rest of the

counties ranged from a high of 53.23% in Du Page County to a low of 36.01% in Effingham County.

In its April 23, 1973, denial of plaintiff's motion for preliminary injunction, the trial court made certain findings, including the following: There was a lack of uniformity among the counties in the multipliers assigned by the Department of Local Government Affairs; it would take at least one week for the Department to recompute and recertify the 1972 rates; at that time the county clerk of Cook County was processing the current real estate tax bills on the basis of the 1972 multiplier it had recently received; based on the delayed schedule then in effect the deadline for payment of the first installment of 1972 taxes had been deferred to June 30; approximately 54 days were needed between the receipt of the multiplier and the issuance of all tax bills; the various taxing districts in Cook County had approximately $26,500,000 in tax anticipation warrants outstanding; the Chicago Board of Education operated for tax purposes on a pegged levy and was then at the maximum so that a reduction in the multiplier would reduce the equalized assessed valuation resulting in a reduction of tax revenue for that body; and any recomputed 1972 rate would not interfere with or delay the Superintendent of Public Instruction in determining distributive shares of any school district in the common school fund. The trial court concluded that notwithstanding an apparent "manipulation" in computing the multipliers by the Department of Local Government Affairs, the plaintiff had "failed to establish by clear and convincing evidence how the Chicago Board of Education or any Cook County School District would be actually aided by granting the relief requested when taking into consideration and balancing the same against the effect of (1) reduction of the equalized assessed valuations, and (2) a delay in the tax bills, and (3) need for use and cost of tax anticipation warrants." His memorandum further stated that "in this Court's opinion directing the Director Kirk to

recall and recompute the multiplier as beneficial as that may be, is overcome by the chaos that could result to the various taxing bodies, and the cost to the public by the delay in the receipt of tax income." We agree that the preliminary injunction was properly denied.

In his order allowing defendants' motion to dismiss the amended complaint the trial judge stated: "The court finds that the Amended Complaint and Bill of Particulars admit that at all times relevant to the Amended Complaint, the assessment of real property in Cook County was equalized at 50% of fair cash value; that Section 1(24) of the Revenue Act of 1939, Ill. Rev. Stats. Chap. 120, par. 482(24) requires that the assessment of real property be equalized for taxation at 50% of fair cash value; that Section 18—8 of the School Code, Ill. Rev. Stats. Chap. 122, par. 18—8 provides that the equalization quotas for State aid to schools be calculated upon the value of taxable property as equalized; that for purposes of the Motion, taking all well pleaded allegations in the Amended Complaint as being true, it is apparent that there has been no illegal overassessment after equalization in Cook County, but to the contrary, that the assessment of real property in Cook County as equalized is in conformity with and not in violation of the Revenue Act of 1939; that taxes have been extended and tax bills issued upon the Cook County assessment as equalized; that the Court does not have jurisdiction or authority in law to grant the relief prayed for in the Amended Complaint."

On this appeal plaintiff reasserts her contention that there should be a remedy for the alleged discriminatory method of computing the Cook County multiplier which resulted in school districts in that county receiving less than their fair share of school aid from the common school fund. She does not seek a refund of taxes, or the use of a recomputed multiplier for taxing purposes. She argues, instead, that an appropriate method of correcting the alleged inequities which have resulted would be to recom-

pute the multiplier for Cook County for the years in question on the same basis as other counties and then redetermine the amount of State school aid Cook County school districts should have received. As to years in which school aid had already been paid, the relief would presumably involve a direction to the legislature to appropriate extra funds to be paid to Cook County school districts from the common school fund to adjust for past underpayments. With respect to years as to which final payment from the common school fund had not yet been made, the remedy would be to order that the distributive share of Cook County school districts in the common school fund be redetermined on the basis of the corrected equalized assessed valuation. In both instances the additional payments to the school districts from the common school fund would theoretically inure to the benefit of Cook County taxpayers by lowering future real estate taxes.

We agree with plaintiff that there is no apparent justification for the utter disregard by the Department of Local Government Affairs of the statutory mandate to equalize assessments in all counties at 50% of fair cash value. We do not, however, agree that it would be feasible to attempt to rectify that error in the manner suggested by plaintiff in the circumstances of this case. (*People ex rel. Hamer v. Jones* (1968), 39 Ill.2d 360.) While we are here concerned only with Cook County, it is clear that every county in this State which is entitled to assistance from the common school fund, excepting only the one with the lowest equalized assessed valuation, has suffered from the same basic inequity in degrees varying with the differences in valuation. That inequity is accentuated in this case by the fact that Cook County contains roughly one-half the total population of the State. We note, too, generally speaking, that it is the more heavily populated counties in the State which are in the higher range of equalized assessed property valuations. In our opinion, however, it

would be completely inappropriate to direct the Superintendent of Public Instruction to distribute school aid in a manner contrary to law in order to remedy the mistakes of other governmental departments which have ignored the law. Furthermore, to utilize one multiplier for purposes of taxation and a different one for other purposes, such as computing State school aid as urged by plaintiff, does nothing to resolve the fundamental problem, which is the failure of both local and State assessing authorities to implement the statutory system for property assessments designed to achieve uniform equalized assessments among the counties at 50% of actual value. Nor does plaintiff's remedy alleviate similar problems in other areas, such as public aid, arising from this nonfeasance. While not of major significance in the context of this case, adoption of plaintiff's suggested remedy would compel taxpayers in those few counties with equalized assessed valuations higher than Cook to contribute portions of their sales and income tax payments (the sources of the common school fund) to make up the amount plaintiff claims due in Cook County school districts.

The problems presented by this case are the direct result of the failure of governmental officials to perform their duties in the manner prescribed by law. As we indicated in *People ex rel. Hamer v. Jones* (1968), 39 Ill.2d 360, 372, these problems "do not readily lend themselves to judicial solution," and, as the trial court here indicated in denying the preliminary injunction, the remedies sought may cause such additional difficulty, delay and expense as to make their use impractical. That, in our judgment, is true here as to past years.

As to equalized, assessed valuations for 1975 taxes, payable in 1976, a different situation exists. As to them our judgment in *Hamer v. Lehnhausen* (1975), 60 Ill.2d 400, should prove dispositive and eliminate inequities in future years.

For the reasons above stated the judgment of the

552

circuit court of Cook County is affirmed.

*Judgment affirmed.*