*In re* APPLICATION OF COOK COUNTY COLLECTOR (The People *ex rel.* Edward J. Rosewell, County Treasurer, Relator-Appellee, v. Sherman O. W. Johnson, Objector-Appellant).

First District (4th Division)   No. 84—1292

Opinion filed May 16, 1985.

Keck, Mahin & Cate, of Chicago (John M. Betts, of counsel), for appellant.

Reuben & Proctor, Simon & Spitali, Kirkland & Ellis, Allen S. Lavin, and Rick Halprin, all of Chicago, for appellee.

PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

The objector-taxpayer, Sherman O. W. Johnson, filed in the circuit court of Cook County objections to the payment under protest of his 1974 real estate taxes levied by the defendant, Edward J. Rosewell, county treasurer and *ex officio* county collector of Cook County (collector) on behalf of the Forest Preserve District of Cook County, the Community College District No. 508, the Metropolitan Sanitary District of Greater Chicago, the Chicago Board of Education, and the Chicago Park District (the taxing bodies). The objector claimed that the State real property equalization factor (multiplier) could not lawfully and constitutionally be applied to Cook County and used as the basis for the extension of taxes for the taxing bodies for the 1974 tax year. Specifically, the objector contended that the adoption of the real property assessment classification ordinance in Cook County (Cook County Ordinances, pars. 13—13 through 13—21 (1983)) rendered the equalization provisions of the Revenue Act of 1939, as amended, inapplicable to Cook County (Ill. Rev. Stat. 1973, ch. 120, par. 627 *et seq.*). The collector made application for judgment. The trial court overruled the objector-taxpayer's objections and found in favor of the collector. We affirm.

The objector first contends that the equalization provisions of the Revenue Act of 1939 (the Act), as amended (Ill. Rev. Stat. 1973, ch. 120, par. 627 *et seq.*), cannot constitutionally be applied to Cook County under section 4(b) of article IX of the 1970 Illinois Constitution (Ill. Const., art. IX, sec. 4(b)) for two reasons. Section 4(b) of article IX provides:

"Subject to such limitations as the General Assembly may hereafter prescribe by law, counties with a population of more than 200,000 may classify or to continue to classify real property for

purposes of taxation."

The objector first argues that the equalization provisions of the Act are contrary to and inconsistent with the classification ordinance adopted by Cook County in 1973, pursuant to the authority granted it under section 4(b) of the 1970 Constitution and in accordance with subsequent statutory mandate (Ill. Rev. Stat. 1973, ch. 120, par. 501a). The classification ordinance divides real estate in Cook County into five classifications and provides that the lowest class shall be assessed at 22% and the highest class at 40% of market value. The objector contends that the entire scheme of assessing different classes of real estate at different percentages of market value as allowed under the 1970 Constitution is contrary to and inconsistent with section 146 of the Revenue Act (Ill. Rev. Stat. 1973, ch. 120, par. 627) and the purpose stated therein to equalize assessments on a county-by-county basis throughout the State in such a manner as to produce within each county a ratio of aggregated assessed valuations to full, fair cash value equivalent to 100%. As a consequence, the objector maintains that the equalization statutes are invalid, at least as applied to Cook County, under section 9 of the Transition Schedule of the 1970 Constitution (Ill. Const. 1970, Transition Schedule, sec. 9), which prohibits the application and enforcement of those statutes presently in force which are inconsistent with the provisions of the new Constitution.

The objector's second argument regarding the constitutionality of applying a multiplier to Cook County is whether the application of the equalization statutes, which antedate the 1970 Constitution, is an unconstitutional interference with Cook County's power to classify real estate under section 4(b) of article IX. The objector maintains that the application of a multiplier to the assessed valuations of property in Cook County changes the levels of individual assessments as provided in the classification ordinance.

As these issues involve the interrelationship of equalization and classification of real property for tax purposes, a brief review of the pertinent statutory provisions is required.

Illinois' system of taxing real, as well as personal, property is established by the Revenue Act of 1939, as amended for the 1974 tax year. (Ill. Rev. Stat. 1973, ch. 120, pars. 482 through 811.) It provides that except in counties with a population of more than 200,000 which classify real property for purposes of taxation, real property is to be valued or assessed at "fair cash value," defined as 50% of actual value. (Ill. Rev. Stat. 1973, ch. 120, pars. 482(24), 501(1).) The Department of Local Government Affairs (Department) is directed to act as

an equalizing authority to equalize the assessments between counties, by lowering or raising the total assessed value of property in any county, as certified to it by the county clerk, so that in all counties the total assessed valuation of real property will be at the specified level of 50% of actual value or "fair cash value." (Ill. Rev. Stat. 1973, ch. 120, par. 627.) The Act provides that the amount to be added to or deducted from the aggregate value of property as locally assessed is to be determined by a comparison of the assessed valuations and the estimated full, fair cash value. (Ill. Rev. Stat. 1973, ch. 120, par. 627.) Thereafter, the Department is directed to equalize assessments of all property among the several counties "by adding to the aggregate assessed value thereof in every county in which the Department may find the valuation to be less than full, fair cash value, such rate per cent as will raise the same to its full, fair cash value *** and by deducting from the aggregate assessed value thereof, in every county or township in which the Department may find the valuation to be more than the full, fair cash value, such rate per cent as will reduce the same to its full, fair cash value." (Ill. Rev. Stat. 1973, ch. 120, par. 630.) The resulting equalization rate is then certified by the Department to the respective county clerks, who extend taxes on a basis of the equalized assessed valuation resulting from the application of the multiplier. Ill. Rev. Stat. 1973, ch. 120, par. 632.

Thus, the foregoing statutory system of property assessments is designed to achieve uniform equalized assessments among the counties at 50% of actual value. We agree with the collector that the objector confuses the concepts of equalization and assessment when he contends that equalization was rendered inapplicable by the enactment of section 4(b) of article IX of the 1970 Constitution. Assessment under the Act is the process of assigning value for tax purposes to individual parcels of real property done on an intracounty basis by the local assessment officials. Classification allows local assessment authorities to assess property within the county at different levels according to its uses. Equalization, on the other hand, is an intercounty method by which the Department at the State level adjusts the aggregate assessed valuations of real property in each county so that in every county the ratio of aggregate assessed valuations to fair cash value is equivalent to 100%. Equalization was not intended to adjust individual assessments to the fair cash value level, as specified under the Act. Rather, equalization is designed to adjust the *aggregate* assessed valuations of real property in each county in order to achieve uniform equalized assessments among the counties.

Under the old Illinois Constitution of 1870, all property was re-

quired to be taxed uniformly in proportion to its fair market value. (Ill. Const. 1870, art. IX, sec. 1.) However, this command was largely ignored by local assessing authorities, particularly in Cook County. Consequently, changes were enacted in the Revenue Act to correct the situation. This was done by empowering the Department to equalize the aggregate assessed valuation of real property in each county so that the aggregate assessed valuation in every county was proportionate to fair market value. (See 3 Record of Proceedings, Sixth Illinois Constitutional Convention 1900-01, 1993 (Proceedings).) Notwithstanding these changes, counties such as Cook County continued to classify real property by applying varying levels of assessment within the county. (*People ex rel. Kutner v. Cullerton* (1974), 58 Ill. 2d 266, 270-71, 319 N.E.2d 55; see 3 Proceedings 1892-93; 7 Proceedings 2109-13.) In recognition of this practice, the General Assembly amended the Illinois Constitution in 1970 to allow counties with a population exceeding 200,000 to classify real property for tax purposes subject to limitations prescribed by the legislature. (Ill. Const. 1970, art. IX, sec. 4(b); see *Hoffmann v. Clark* (1977), 69 Ill. 2d 402, 414-24, 372 N.E.2d 74, for a discussion of the constitutional debates concerning the adoption of section 4 of article IX.) It was thought that as densely populated counties will be more complex and thus contain more commercial and industrial properties, as well as residential areas, such counties would be better able to shift the tax burden on those properties best able to pay. Furthermore, there was the fear that a sudden change from the *de facto* system of classification which had long existed in Cook County to a system of uniformity could lead to chaotic conditions in tax collection procedures. *People ex rel. Kutner v. Cullerton* (1974), 58 Ill. 2d 266, 271, 319 N.E.2d 55, quoting 7 Proceedings 2115-16.

■ Contrary to the objector's assertion, the fact that while individual properties in Cook County are now allowed by statute to be assessed below fair cash value, the 1970 Constitution has not altered the rule that the aggregate assessed valuation of all real property in each county will be equalized so that the aggregate assessed valuations will be proportionate to fair cash value in all counties. There is no indication in the statute that the Department is to disregard this statutory mandate to equalize assessments in all counties at the 50% of actual value level as specified under the Act. (*Harte v. Lehnhausen* (1975), 60 Ill. 2d 542, 550, 328 N.E.2d 543, *cert. denied* (1975), 423 U.S. 912, 46 L. Ed. 2d 141, 96 S. Ct. 216.) Therefore, equalization continues to be required by statute and applies to Cook County. Consequently, the objector's argument that equalization is inconsistent

with and contrary to the authority granted to Cook County under section 4(b) of article IX of the Illinois Constitution of 1970, and, as such, cannot be applied under section 9 of the Transition Schedule of the Constitution, is without merit.

■ Furthermore, we reject the objector's second argument that the application of a multiplier to individual assessments of real property in Cook County increases individual assessments as set by the classification ordinance, in violation of section 4(b), which provides that classification is subject to "such limitations as the General Assembly may hereinafter prescribe." Again, the objector confuses assessment which operates on the local level, and equalization which operates on a statewide basis. Under section 146 of the Act, the Department is authorized to adjust the aggregate assessed value of real property in any county so that the ratio of aggregate assessed value to actual value of real property will be the same in every county. (Ill. Rev. Stat. 1973, ch. 120, par. 627.) The Department has no authority to revise or change any individual assessments made by local assessing officers. (Ill. Rev. Stat. 1973, ch. 120, par. 633.) The objector's conclusion that the application of a multiplier will result in an increase in individual assessments in Cook County is, therefore, without foundation.

■ Finally, the objector contends that, aside from any constitutional basis for not applying equalization to Cook County, amendments made to sections 20 and 1(24) of the Act (Ill. Rev. Stat. 1973, ch. 120, pars. 501, 482(24)) establish that Cook County is expressly excluded from application of the equalization provisions.

These sections, amended by Public Act 77—725, effective August 12, 1971, provide as follows:

"Sec. 20. Except in counties with a population of more than 200,000 which classify real property for purposes of taxation, real property shall be valued as follows:

(1) Each tract or lot of real property shall be valued at its fair cash value."

"Sec. 1. The words and phrases following, whenever used in this Act shall be construed to include in their meaning the definitions set opposite the same in this Section ***.

* * *

(24) Fair Cash Value—Except in counties with a population of more than 200,000 which classify real property for purposes of taxation, the term 'fair cash value' when used in this Act means 50% of the actual value of real and personal property." Ill. Rev. Stat. 1973, ch. 120, pars. 501, 282.

The objector maintains that as counties with a population exceeding 200,000 are excepted from the definition of "fair cash value" and that as the Department is mandated to equalize assessments to "fair cash value," the Department is authorized to equalize assessments only in those counties which do not classify.

However, as we earlier indicated, under the Act these provisions merely establish that, at the local level in counties with a population of less than 200,000, the local assessing officials are commanded to assess individual property at 50% of actual value (fair cash value). Counties such as Cook County are allowed to assess individual properties of real property at varying percentages of actual value, according to its uses. Notwithstanding, once local assessments have been made, the Department is directed by statute to equalize assessments between counties so that in all counties the aggregate value of property will be assessed at its fair cash value. *Harte v. Lehnhausen* (1975), 60 Ill. 2d 542, 550, 328 N.E.2d 543, *cert. denied* (1975), 423 U.S. 912, 46 L. Ed. 2d 141, 96 S. Ct. 216.

■ We conclude that, as the statutory mandate to equalize assessments at 50% of actual value (fair cash value) applies to all counties, including Cook County, the certification of the multiplier by the Department for Cook County and its application by the county clerk for Cook County to locally assessed property valuations in extending taxes for the taxing bodies for the 1974 tax year was proper.

Accordingly, the judgment of the circuit court of Cook County overruling the objector-taxpayer's objections is affirmed.

Affirmed.

JOHNSON and LINN, JJ., concur.