*In re* REHABILITATION OF AMERICAN MUTUAL REINSURANCE COMPANY (American Hardware Mutual Insurance Company, Appellant).

First District (6th Division)   No. 1—90—3384

Opinion filed June 26, 1992.—Rehearing denied August 10, 1992.

2

Lord, Bissell & Brook, of Chicago (Hugh C. Griffin, Spencer Leroy, and Mark R. Goodman, of counsel), for appellant.

Stephen F. Selcke, Director of Insurance of State of Illinois, and Rudnick & Wolfe, of Chicago (Seymour Simon, Theodore A. Shapero, Stephen W. Schwab, and Gail M. Goering, of counsel), for appellees.

JUSTICE RAKOWSKI delivered the opinion of the court:

This appeal arises from an order entered by the circuit court on October 24, 1990, denying a petition filed by appellant, American Hardware Mutual Insurance Company (American Hardware), in the insurance rehabilitation proceedings of American Mutual Reinsurance Company (Amreco). American Hardware's petition sought to have the court order the rehabilitator to recognize certain setoff rights allegedly provided by the amended rehabilitation plan (Amended Plan) and section 206 of the Illinois Insurance Code (Ill. Rev. Stat. 1989, ch. 73, par. 818) (Insurance Code). A separate appeal of the denial of American Hardware's petition was also filed by Employers Insurance of Wausau (Wausau) on December 4, 1990, although Wausau did not participate in the proceedings below. The issues on appeal are: (1) whether the trial court erred in denying American Hardware's petition seeking certain setoff rights; and (2) whether Wausau is a proper party to participate in this appeal.

Amreco operates exclusively as a reinsurance company whereby it does not sell insurance to the public but only to other insurance companies. The companies which are the insureds of Amreco, also referred to as cedents, have transferred a portion of the risk they have underwritten through their own insurance policies to Amreco. Amreco has also transferred a portion of the risk it has assumed from its cedents to other insurance and reinsurance companies. These companies are organized into groups or "pools," and the

risks Amreco is reinsuring have been divided among them according to agreed-upon percentages. Many companies, including American Hardware and Wausau, have ceded risks to Amreco and have also assumed risks from Amreco as pool participants. Thus, they are both the reinsureds and reinsurers of Amreco.

Amreco bills its pool participants at the end of a three-month period for amounts they owe on claims that Amreco paid during that quarter. In some instances, companies that have ceded claims and assumed risks from Amreco can set off amounts Amreco owes against reinsurance obligations owed by the companies as pool participants.

In November 1986, the Illinois Department of Insurance (Department) determined that Amreco's financial condition, if allowed to continue, would be hazardous to policyholders, creditors, or the public within the meaning of section 188 of the Insurance Code (Ill. Rev. Stat. 1985, ch. 73, par. 800). Amreco was subsequently ordered to prepare and file with the Department a plan to resolve its financial situation. A committee selected from Amreco's board of directors drafted what was identified as the "Voluntary Plan," which included a provision whereby pool participants who were also cedents waived their setoff rights. However, when Amreco distributed the plan to its contractholders (cedents and pool participants), it was not approved.

On February 22, 1988, the Director of the Department filed a complaint for Amreco's rehabilitation in the circuit court (supervising court) along with a proposed plan of rehabilitation which also included a setoff waiver. The court entered an order of rehabilitation, scheduled a hearing and ordered the Director to distribute the plan to Amreco's creditors and contractholders for review. The contractholders again objected to the plan because of a provision eliminating their setoff rights, and the plan was withdrawn. A second plan (Amended Plan) was then submitted and distributed for review. After notice to all contractholders, including American Hardware and Wausau, a public hearing was held in September of 1988. There being no objection to the Amended Plan, it was approved by the supervising court.

Under the Amended Plan Amreco reviews, pays and bills its pool participants on a quarterly basis. Thus, each cedent must report all claims within 90 days after paying them. At the end of each quarter the Director (now Rehabilitator) determines which claims reported during that quarter are approved for payment and then bills the pool participants for their share of the approved

claims. Near the end of the next quarter, the Rehabilitator must pay all approved claims from the previous quarter using funds collected from the previous quarter's pool billings. This payment is made part in cash and part by an interest-bearing instrument known as a "surplus draft" in a proportion approved by the supervising court. In 1990, Amreco paid claims in a combination of 37.5% cash and 62.5% surplus draft. The surplus draft is a major part of the rehabilitation plan and is designed to be the means by which Amreco eventually achieves financial recovery. Payment of the drafts to cedents triggers the obligation of pool participants to pay Amreco in cash. According to the Amended Plan, Amreco's financial condition would improve to acceptable levels, it would pay claims as they arose and ultimately the outstanding surplus drafts would be redeemed.

In addition to receipt of payment by surplus draft, pool participants who are also cedents are able to set off their pool obligation in one quarter with the amount Amreco owes them for the same quarter. Therefore, according to section 6.01(b) of the Amended Plan, the cedent is required to file, along with its 90-day paid claims report, the amount and description of setoff it has applied, is applying or intends to apply against Amreco's payment on the reported claims. At the end of the period the Rehabilitator calculates the amount of claims paid by the cedent in that quarter with the amount of pool obligations the company owes for the same period. The balance due if any is paid to the cedent in the following quarter.

On June 6, 1990, American Hardware filed a petition with the supervising court requesting that the court instruct the Rehabilitator to recognize American Hardware's full setoff rights. What American Hardware sought was that Amreco withhold cash and surplus draft payments owed to American Hardware at the end of each quarter so that American Hardware could apply this accumulated amount against debts it might owe Amreco in any future 90-day period. Thus, rather than accept payment of part cash and part surplus draft, American Hardware sought to continually apply the remaining debt owed by Amreco to reduce the amount of American Hardware's pool obligation. The circuit court denied the petition, and American Hardware filed this appeal.

Wausau did not participate in the hearing on American Hardware's petition nor did Wausau file a motion to intervene in the proceedings. However, in December 1990, Wausau filed a "Notice of Separate Appeal" from the order denying American Hardware's pe-

tition. The Rehabilitator subsequently filed a motion to dismiss Wausau's separate appeal which by order of this court was taken with the appeal of American Hardware.

American Hardware contends that the trial court erred in denying its petition because the limitation of its setoff rights to a 90-day period as prescribed by the Amended Plan was improper. What American Hardware seeks is that any payment owed by Amreco which would be in the form of cash and surplus draft would be withheld to be applied as a setoff against American Hardware's future pool obligations to Amreco. In the alternative, American Hardware also proposes that it could accept payment from Amreco on the condition that the unpaid amount of the surplus draft would be set off against any future debt American Hardware would owe Amreco. In either instance American Hardware would avoid the surplus draft and would instead receive full payment in cash.

American Hardware first argues that the denial of its petition was improper because the limitation of its setoff rights was contrary to section 206 of the Insurance Code. Section 206 provides in part:

"In all cases of mutual debts or mutual credits between the company and another person, such credits and debts shall be set off or counterclaimed and the balance only shall be allowed or paid ***." (Ill. Rev. Stat. 1989, ch. 73, par. 818.)

In support of its claim that the denial of its petition was contrary to this statute, American Hardware relies on the rule of statutory construction that where a statute grants a right and states the conditions under which it can be exercised, the statute implies that the legislature intended that no other conditions be applied. (See *Department of Corrections v. Illinois Civil Service Comm'n* (1989), 187 Ill. App. 3d 304, 309, 543 N.E.2d 190.) In addition, Illinois courts have consistently held that neither an administrative officer nor a court may read into a statute conditions, limitations or exceptions not found in the language of the statute. *In re Estate of Orzoff* (1983), 116 Ill. App. 3d 265, 268, 452 N.E.2d 82.

Applying these principles to section 206 of the Insurance Code, American Hardware claims that the Rehabilitator's limitation of its setoff rights was an attempt to read into the statute a limitation not found in its language or intended by the legislature. However, what American Hardware has failed to recognize is that section 206 should be considered in the context of all of article XIII of the Insurance Code and that each provision should be construed in connection with every other provision and in light of the general

purposes of the article. (*Miller v. Department of Registration & Education* (1979), 75 Ill. 2d 76, 81, 387 N.E.2d 300; *Neville v. Friedman* (1977), 67 Ill. 2d 488, 492, 367 N.E.2d 1341.) The general purpose of article XIII of the Insurance Code (Ill. Rev. Stat. 1987, ch. 73, pars. 799 through 833) is to provide for the rehabilitation as well as the liquidation, conservation, and dissolution of insurance companies. Viewing section 206 in this context, we do not find any language to prohibit the regulation of setoff rights provided for in the Amended Plan. In fact, while the section indicates when setoff is not allowed, there is no reference in the provision regarding how it should be applied in instances where it is allowed.

■ Section 192 of article XIII also provides that when an order is entered directing rehabilitation, the rehabilitator has the authority to "conduct the business of the company and take such steps towards removal of the causes and conditions which have made such proceedings necessary as may be expedient." (Ill. Rev. Stat. 1987, ch. 73, par. 804(1).) This section also provides that if the Rehabilitator "finds that it is to the best interests of policyholders, creditors and the company to effect a plan of mutualization or rehabilitation, he may submit such plan to the court for its approval." (Ill. Rev. Stat. 1987, ch. 73, par. 804(3).) Under section 192 the Rehabilitator also has the authority to include in the plan any terms or conditions deemed necessary or advisable. When a plan has been prepared, "[n]otice of the hearing upon any such plan shall be given in the manner as may be fixed by the court and upon such hearing the court may either approve or disapprove the plan or modify it in such manner and to such extent as to the court shall seem appropriate." (Ill. Rev. Stat. 1987, ch. 73, par. 804(3).) Thus, the Rehabilitator, in this case, had the authority to develop the Amended Plan. Notice of the hearing on the plan was then given to all of the contractholders, including American Hardware, where they had an opportunity to raise any objection to the plan and its effect on their respective setoff rights. No objection to the Amended Plan was raised at the hearing, and it was approved by the court. Therefore, the Rehabilitator complied with the provisions of article XIII where the contractholders had an opportunity to review the Amended Plan and raise any objection to its implementation.

■ American Hardware also argues that the limitation of its setoff rights was improper because its future pool obligations, which it seeks to apply as a setoff against the current amount owed by Amreco, are a mutual debt which thus can be applied as a setoff under section 206. However, the fact that American Hardware's fu-

ture pool obligations may have been a mutual debt under section 206 did not mean that its exercise of its setoff rights could not be regulated in such a way as to facilitate Amreco's rehabilitation, particularly when section 206 is viewed in conjunction with the other provisions of article XIII.

■ American Hardware next contends that the Rehabilitator's position was contrary to the express provisions of the Amended Plan. The provisions of the Amended Plan which American Hardware cites in support of its argument are paragraphs 4.01, 6.01, 6.02, and 7.03. Paragraph 4.01 provides that any cedent may assert any setoff or counterclaim against Amreco provided the obligation sought to be set off has been paid and proper written notice has been given to the Rehabilitator. Paragraphs 6.01 and 6.02 address claims reporting and directs ceding companies to report the amount and description of any setoff the cedent has applied, is applying, or intends to apply against Amreco's share of paid losses. Paragraph 7.03 provides that any and all payments by Amreco shall be the net of any sums properly set off. Although American Hardware argues that the phrase "intends to apply" in paragraph 6.02 allows for a setoff with future obligations of an undetermined amount, the provision requires that cedents report the *amount and description* of any setoff the cedent intends to apply. Therefore this provision does not allow for a setoff with future obligations of an unknown amount as American Hardware suggests. The remaining provisions of the Amended Plan refer to the availability of setoff and how it is to be exercised. Not only is the Rehabilitator's position not contrary to the Amended Plan, as American Hardware alleges, but the Amended Plan expressly provides the Rehabilitator with authority to limit American Hardware's application of setoff to the 90-day payment periods set forth in the plan.

■ In conclusion, we note that although American Hardware claims to seek unlimited exercise of setoff in its transactions with Amreco, what American Hardware in effect intends is that by not accepting payment from Amreco, it can avoid the surplus draft/cash form of payment and can then use the unpaid amount to set off and reduce its pool obligation to Amreco. Because the financial rehabilitation of Amreco is dependent on the generation of revenue through payment to its cedents with part cash and part surplus draft and its receipt of payment in cash from its pool participants, what American Hardware proposes would undermine the rehabilitative process. If Amreco's rehabilitation fails and it is forced into liquidation, all of its contractholders, including American Hardware,

will receive less revenue from Amreco than is currently available with the surplus draft/cash method of payment. For these reasons, as well as those discussed above, we conclude that the Rehabilitator's limitation of American Hardware's use of setoff as prescribed by the Amended Plan was proper.

Accordingly the trial court's order denying American Hardware's petition is affirmed.

WAUSAU'S SEPARATE APPEAL

Wausau has filed a separate appeal from the denial of American Hardware's petition, and in addition to the issue raised in American Hardware's appeal, Wausau raises the issue of whether the order denying American Hardware's petition is void because Wausau did not receive notice of the hearing or have an opportunity to participate in the proceedings.

■ Although it did not take part in the hearing on American Hardware's petition, Wausau contends that it has standing to participate in this appeal because it was a necessary party to that proceeding and did not receive notice. A necessary party is one whose participation in the lawsuit is required for any of the following reasons: (1) to protect an interest which the absent party has in the subject matter of the controversy which would be materially affected by his absence; (2) to reach a decision that will protect the interests of those before the court; and (3) to enable the court to make a complete determination of the controversy. (Ill. Rev. Stat. 1989, ch. 110, par. 2—405(a); *Zurich Insurance Co. v. Raymark Industries, Inc.* (1986), 144 Ill. App. 3d 943, 946, 494 N.E.2d 630; *Tomaso v. Plum Grove Bank* (1985), 130 Ill. App. 3d 18, 26, 473 N.E.2d 588.) Consequently, the court is without jurisdiction to enter an order or judgment which affects the right or interests of someone not before the court, and under these circumstances, such order or judgment is void. *Lain v. John Hancock Mutual Life Insurance Co.* (1979), 79 Ill. App. 3d 264, 269, 398 N.E.2d 278.

In its argument that it was a necessary party to the hearing on American Hardware's petition, Wausau implies that it was not yet a party to the proceeding on American Hardware's petition. However, American Hardware's petition arose from the original rehabilitation proceeding where Wausau and the other contractholders were already parties. While the court is without jurisdiction to enter a judgment or order where one found to be a necessary party has not been joined, the same does not apply where one who is already a party to a proceeding has not been given notice of pleadings or motions subsequent to a complaint. Supreme Court Rule 104 addresses the issue of notice to parties,

and Rule 104(d) states in relevant part that "[f]ailure to deliver or serve copies as required by this rule does not in any way impair the jurisdiction of the court over the person of any party." (134 Ill. 2d R. 104(d).) In *People ex rel. Hamer v. Jones* (1968), 39 Ill. 2d 360, 371, 235 N.E.2d 589, the court held that a motion for extension of time to answer or otherwise plead without notice to the opposing party was not a denial of due process where the nonmoving party was not harmed by the ruling. Similarly, the court in *In re Marriage of Collins* (1987), 154 Ill. App. 3d 655, 657, 506 N.E.2d 1000, held that the failure to serve the nonmoving parties with notice of a motion for reconsideration did not render the ruling on the motion invalid where the parties not served were present at the hearing on the motion and suffered no prejudice as a result of not being served. A motion to vacate a dismissal absent notice to the opposing party was not void in *Kollath v. Chicago Title & Trust Co.* (1974), 24 Ill. App. 3d 353, 357-58, 321 N.E.2d 344, *rev'd on other grounds* (1975), 62 Ill. 2d 8, 338 N.E.2d 188. The *Kollath* court held that Supreme Court Rule 104(b) "renders a failure to comply with Rule 104(b) or like rules in the circuit courts non-jurisdictional." *Kollath*, 24 Ill. App. 3d at 357-58. See also *Schlenz v. Castle* (1985), 132 Ill. App. 3d 993, 1014, 477 N.E.2d 697.

In this case we also conclude that, although Wausau did not receive notice or participate in the hearing on American Hardware's petition, it was not harmed or prejudiced by not being present. American Hardware's petition was precipitated by the implementation of the Amended Plan, which contained the provisions regarding Amreco's partial payment with surplus drafts, cash payment by pool participants and the limitation of setoff to the same 90-day period in which both debts occurred. When the Amended Plan was being considered, all of the contractholders including Wausau had an opportunity to review it and to raise any objections at the public hearing. Thus, the same information that was available to American Hardware regarding the impact of the Amended Plan on its setoff rights was also available to Wausau, and Wausau was equally able to take the same or similar action pertaining to its setoff rights.

Additionally, because the substance of how Wausau proposes to apply its setoff rights is somewhat different from what American Hardware seeks, Wausau was not prejudiced by not receiving notice of the hearing on American Hardware's petition. While American Hardware requests that the Rehabilitator withhold payments due from Amreco to be applied to future amounts American Hardware will owe as a pool participant, Wausau currently owes Amreco over $2 million in pool obligations which it is withholding to set off against amounts Amreco will

owe it in the future. Consequently, a ruling on American Hardware's petition by the court would not be a determination as to what Wausau seeks.

Even assuming, *arguendo*, that what Wausau sought was the same as that proposed by American Hardware, Wausau would still not be adversely affected by the court's ruling.[1] Because Wausau did not receive notice or participate in the hearing on American Hardware's petition, any ruling by the court, while valid as to American Hardware, would not be in effect as to Wausau. (*Moore v. One Stop Medical Center* (1991), 218 Ill. App. 3d 1011, 1016, 578 N.E.2d 1231.) While Wausau argues that it would be prejudiced if it brought such a motion because the trial court has already ruled on the issue as to American Hardware, we deem the argument to be without merit. Like American Hardware, Wausau received notice of the hearing on the Amended Plan, and like American Hardware, it did not object. While judicial economy would be best served if one hearing would encompass all contractholders with similar motions, Wausau has not supplied us with any authority that would compel such a result.

Finally, in support of its proposition that an order entered without proper notice is void, Wausau cites as additional authority *Maras v. Bertholdt* (1984), 126 Ill. App. 3d 876, 467 N.E. 2d 599, *Wilson v. Moore* (1973), 13 Ill. App. 3d 632, 301 N.E.2d 39, and *Vlahakis v. Parker* (1971), 3 Ill. App. 3d 126, 278 N.E.2d 523 (abstract decision). The *Vlahakis* and *Wilson* courts, partially relying on Supreme Court Rule 104(b), concluded that an order entered without notice was void. However, based on Supreme Court Rule 104(d) and the case law cited above (see *Hamer*, 39 Ill. 2d 360, 235 N.E.2d 589; *Collins*, 154 Ill. App. 3d 655, 506 N.E.2d 1000; *Kollath*, 24 Ill. App. 3d 353, 321 N.E.2d 344), we conclude that a failure to serve a nonmoving party with notice renders a subsequent order based on that motion voidable rather than void. The determining factor is not the absence of notice but whether there was any harm or prejudice to the nonmoving party. In *Maras v. Bertholdt*, a more recent decision cited by Wausau, the plaintiff's appeal filed within 30 days of a final order denying plaintiff's motion for a new trial was timely even though the appeal was filed more than 30 days after an earlier written order which contained

---

[1]This assumption seems remote indeed in that it has been over 3½ years since the Amended Plan was approved and over 19 months since the court ruled on American Hardware's petition.

Rule 304(a) language because the plaintiff did not receive notice of the earlier order. (*Maras*, 126 Ill. App. 3d at 881.) In that case, plaintiff would have clearly been prejudiced if the appeal had been found untimely unlike the case *sub judice* in which Wausau is not precluded from filing its own petition.

For the foregoing reasons, we conclude that Wausau does not have standing to participate in this appeal. Accordingly, the Rehabilitator's motion to dismiss Wausau's appeal is granted. As to this appeal, the order of the circuit court is affirmed.

Affirmed.

EGAN, P.J., and LaPORTA, J., concur.