(No. 46073.-

THE PEOPLE *ex rel.* LUIS KUTNER *et al.*, Appellants, v. P. J. CULLERTON, County Assessor, *et al.*, Appellees.

*Opinion filed Sept. 17, 1974.—Rehearing denied Nov. 26, 1974.*

Paul E. Hamer, of Northbrook, for appellants.

William J. Scott, Attorney General, of Springfield, and Bernard Carey, State's Attorney, of Chicago (John D. Whitenack, Assistant Attorney General, and Sheldon Gardner and Lorence H. Slutzky, Assistant State's Attorneys, of counsel), for appellees.

MR. JUSTICE WARD delivered the opinion of the court:

In January, 1972, a complaint was filed in the circuit court of Cook County by Luis Kutner and Agnes Kantanen on behalf of themselves and all other similarly situated taxpayers against P. J. Cullerton, the assessor of Cook County, Harry H. Semrow, member of the Cook County Board of Appeals, George M. Keane, member of the Cook County Board of Appeals, George E. Mahin, Director of the Illinois Department of Revenue, Robert J. Lehnhausen, Director of the Illinois Department of Local Government Affairs, and Edward Hanrahan, Cook County State's Attorney. The complaint alleged that the defendant officials had not complied with certain provisions of the Revenue Act of 1939 (Ill. Rev. Stat. 1971, ch. 120, par. 482 *et seq.*) pertaining to the assessment and equalization of taxable real property. The circuit court dismissed the complaint and the plaintiffs' appeal has been taken by us under Rule 302(b).

The first count of the complaint was brought under the provisions of section 323 of the Revenue Act of 1939 (Ill. Rev. Stat. 1971, ch. 120, par. 804), which authorizes a civil action to be brought for damages caused by the neglect or evasion of duty by a county clerk, assessor, collector or other official described in the statute. The count alleged that the defendants, with the exception of the State's Attorney of Cook County, had failed to perform their duty to assess and equalize real property at either 100% of full cash value as formerly was required, or at a uniform percentum of full fair cash value. This failure resulted in a loss of taxes since 1965 which amounted to $420,000,000, it was alleged, and the complaint was brought for double this amount, or $840,000,000, as the statute authorizes. The statute authorizes the court at its discretion to remove offending officers from office, and the complaint asked for the removal of the defendants.

Count II of the complaint asked for a writ of

*mandamus* directing the State's Attorney of Cook County to institute prosecutive proceedings against the Cook County assessor and the members of the Cook County Board of Appeals. The provisions of section 326 of the Revenue Act of 1939 (Ill. Rev. Stat. 1971, ch. 120, par. 807) declare that it is the duty of the State's Attorney of each county to prosecute violators of the Revenue Act. In other counts of the complaint the plaintiffs sought writs of *mandamus* to direct Robert J. Lehnhausen, the Director of the Department of Local Government Affairs, to order the reassessment and equalization of all industrial and commercial properties to full, fair cash value for the tax years of 1965 and thereafter.

There are five principal questions which appear in this appeal. (1) Whether the provisions in section 4(b) of article IX of the Constitution of Illinois of 1970, which authorized counties with a population of more than 200,000 to classify real property for purposes of taxation, are self-executing or whether they require enabling legislation; (2) in counties where there has been classification of real property prior to the effective date of the Constitution of Illinois of 1970, can the county assessor continue to classify property or must the classification and administration of it be by the county board of such county; (3) whether section 4(b) of article IX of the Constitution of 1970, which authorized classification, had a retroactive effect and served to ratify the practice by assessors in some counties of classifying real property for the purposes of taxation; (4) whether a system authorizing the classification of property for purposes of taxation violates the due process and equal protection clauses of the constitutions of the United States and Illinois, and (5) whether sections 20 and 1(24) of the Revenue Act of 1939 (Ill. Rev. Stat. 1971, ch. 120, pars. 501 and 482(24)), which provide that counties which do not classify real property, or cannot qualify to do so, may or shall assess real property at 50% of the value of the property, violate the due process and

equal protection clauses of the constitutions of the United States or of Illinois.

Since the presentation of this appeal the first two of the questions presented have been resolved by this court adversely to the plaintiffs' contentions. It is now clear that authority to classify real property was conferred by the provisions of section 4(b) of article IX and that counties described in the provisions did not need enabling legislation in order to classify. Also, the assessor, without securing authority from the county board, was permitted to continue to classify real property in a county where this was done prior to the Constitution of 1970. *La Salle National Bank v. County of Cook,* 57 Ill.2d 318.

Turning to the third question, we consider that section 4(b) of article IX had retroactive effect and operated to ratify the *de facto* practice of classifying which existed in Cook County at the time the new constitution was adopted.

A constitutional provision may have a retroactive effect if such an intention is clearly expressed in the constitution. *City of Chicago v. Rumsey,* 87 Ill. 348, 357; *Wilcox v. People ex rel. Lipe,* 90 Ill. 186, 198-201.

Section 4(b) of article IX provides:

"Subject to such limitations as the General Assembly may hereafter prescribe by law, counties with a population of more than 200,000 may classify or continue to classify real property for purposes of taxation. Any such classification shall be reasonable and assessments shall be uniform within each class."

The language "continue to classify" shows an unmistakable intention of the delegates to ratify the practice of classifying real property which existed in Cook County at the time of the constitutional convention. The Committee on Revenue and Finance in proposing what was to become section 4(b) of article IX stated:

"A county of more than 200,000 population may continue its present classification practices or establish a system of classification by action of the county governing

board without any further approval from the General Assembly. ***

* * *

The provisions permitting counties of more than 200,000 population to classify real estate represent a recognition of the desirability of permitting the de facto system of classification in Cook County to continue and of the stated desire to have it extended to other counties. This system has developed out of the experience of many years. Given the necessity of raising large sums of money from property taxation, it reduces the harmful effects of the tax by placing more of the burden upon those kinds of property which are unique to the central city or which obtain special advantages from a central city location.

The Committee also recognizes the fact that an abrupt shift from the present system to a system of uniformity would create political, administrative and legal chaos." 7 Record of Proceedings, Sixth Illinois Constitutional Convention 2108, 2115-16 (hereafter Proceedings).

Comments made by delegates when section 4.1 (later section 4(b)) was being considered illustrate that it was intended that this section, if adopted, would ratify existing classification procedures in Cook County. Delegate Dawn Clark Netsch, for example, expressed herself:

"*** I am persuaded—and I sat through all of the deliberations on it and I don't think I am misinterpreting—that the intent of the Revenue and Finance Committee in section 4.1 was to give the counties over 200,000 directly the power to classify, and specifically in the case of Cook County to allow the classification to continue in existence as it is at the present time without any formal action by any elected authority other than the fact that the assessor is the one who distributes the manual which incorporates the classification system. I think that the report makes it entirely clear and, in fact, the report was changed at one point to make it entirely clear that Cook County would be able to continue its assessment system without any formal action by any other body. That was deliberate and conscious, and it is reflected in the report." 3 Proceedings 1996.

Delegate Elmer Gertz addressed Delegate Thomas Mc-Cracken:

"Mr. McCracken, in part you have anticipated some. of my questions. I'd like to ask you what would be the effect if the proposed section 4.1 were adopted? Would that, in your opinion, fully legalize retroactively what Cook County has done?

Mr. McCracken: Yes, it would, in my opinion." 3 Proceedings 1995.

Finally, the plaintiffs generally argue that permitting the classification of real property for the purposes of taxation violates the equal protection provisions of the constitutions of Illinois and the United States. They also contend specifically (1) that it is palpably arbitrary to differentiate between counties on the basis of population, allowing classification under section 4(b) of article IX of our constitution of 1970 in counties with populations greater than 200,000; (2) that it is unconstitutionally arbitrary to define fair cash value in counties where there is no classification of real property, as 50% of the value of property as is done in sections 20 and 1(24) of the Revenue Act of 1939 (Ill. Rev. Stat. 1971, ch. 120, pars. 501, 482(24)).

It is clear, however, that in matters of taxation States have a very broad latitude. (*Madden v. Kentucky*, 309 U.S. 83, 88, 84 L. Ed. 590, 60 S. Ct. 406.) This latitude and the constitutional limitation on it have been described by the Supreme Court of the United States:

"*** The States have a very wide discretion in the laying of their taxes ***. Of course, the States, in the exercise of their taxing power, are subject to the requirements of the Equal Protection Clause of the Fourteenth Amendment. But that clause imposes no iron rule of equality, prohibiting the flexibility and variety that are appropriate to reasonable schemes of state taxation ***.

But there is a point beyond which the State cannot go without violating the Equal Protection Clause. The State must proceed upon a rational

basis and may not resort to a classification that is palpably arbitrary. The rule often has been stated to be that the classification 'must rest upon some ground of difference having a fair and substantial relation to the object of the legislation.' " *Allied Stores of Ohio v. Bowers,* 358 U.S. 522, 526-7, 3 L. Ed. 2d 480, 484-5, 79 S. Ct. 437.

The presumption of constitutionality which accompanies a State's scheme of taxation may be overcome only by a clear showing that it is arbitary and unsupportable by any set of facts. (*Madden v. Kentucky,* 309 U.S. 83, 84 L. Ed. 590, 60 S. Ct. 406; *Carmichael v. Southern Coal & Coke Co.,* 301 U.S. 495, 81 L. Ed. 1245, 57 S. Ct. 868; *Lehnhausen v. Lake Shore Auto Parts Co.,* 410 U. S. 356, 35 L. Ed. 2d 351, 93 S. Ct. 1001.) The plaintiffs have not met their burden of showing clearly that the constitution's conferring authority to classify or the statute's setting the rate of assessment is unconstitutionally arbitrary. We have upheld statutory classifications based upon population (*Treece v. Shawnee Community Unit School District No. 84,* 39 Ill.2d 136; *People ex rel. Vermilion County Conservation District v. Lenover,* 43 Ill.2d 209) where there is a reasonable basis for it considering the purposes of the legislation. We cannot say the classifications here are clearly unreasonable or arbitrary. It is reasonable to assume that counties with populations greater than 200,000 will be more complex and contain industrial and commercial, as well as residential areas. It cannot be said that allowing these counties to classify property for purposes of taxation in order to establish a more rational scheme of taxation is arbitrary and unreasonable. Certainly the plaintiffs have not shown it to be unreasonable. Nor have they shown that a statutory direction that where real property is not to be classified it shall be assessed at only 50% of its value is clearly arbitrary or unsupportable on any given set of facts. It may be that the legislature considered such a limitation on assessments would repre-

sent a realistic recognition that assessments have been made at less than full value, or that such a limitation would have practical merit or value as a substitute for classification of property.

For the reasons given, the judgment of the circuit court is affirmed.

*Judgment affirmed.*