63 Ill. App.3d 835 (1978)
380 N.E.2d 852
In re APPLICATION OF BERNARD KORZEN, County Treasurer.  (THE PEOPLE ex rel. BERNARD KORZEN, Applicant-Appellee,
v.
MID-CONTINENTAL REALTY CORPORATION, Objector-Appellant.)
No. 63204.
Illinois Appellate Court  First District (1st Division).
Opinion filed August 14, 1978.
*836 William J. Harte, Ltd., of Chicago (William J. Harte and John Gervasi, of counsel), for appellant.
Bernard Carey, State's Attorney, of Chicago (Paul P. Biebel, Jr., Henry A. Hauser, and Alan L. Fulkerson, Assistant State's Attorneys, of counsel), for appellee.
Judgment affirmed.
Mr. JUSTICE BUCKLEY delivered the opinion of the court:
This case involves objector's "complaint" filed in answer to the county collector's complaint for tax judgment levied against 12 parcels of real estate located on the City of Chicago's north side. The circuit court found objector's evidence to be insufficient to sustain their complaint regarding the assessment ratio applied to rental residential properties by the assessor. Objector brought this appeal.
*837 There are three issues in the instant case: (1) whether in 1972, the Cook County assessor possessed authority to classify real property for the purposes of taxation; (2) whether that power was properly exercised in the form of the quadrennial assessment against objector's property; and (3) whether the assessment invidiously discriminated against objector in violation of the Federal or State guarantees of equal protection of the laws.
Mid-Continental Realty Company owned 12 high-rise apartment buildings which were subject to real estate taxation in 1972 and which were the subject of a specific objection to the collector's application for sale of delinquent 1972 real estate taxes. All are located in North and Lakeview Townships in the City of Chicago. The 1972 quadrennial assessments of 11 of the parcels that have been the subject of prolonged litigation were raised in the aggregate $4,044,773 over their prior 1968 quadrennial assessments, an increase of about 26%.
Prior to initiating the proceeding at bar, objector filed an action for injunctive relief in the Chancery Division of the Circuit Court of Cook County to have the increased 1972 quadrennial assessments declared unlawful and void as constructively fraudulent and rendered in violation of various Federal and State constitutional provisions. After the evidence at trial was taken, proofs closed, and the matter set for decision, the trial court ruled in accordance with the newly published decision in Clarendon Associates v. Korzen (1973), 56 Ill.2d 101, 306 N.E.2d 299, that it was without jurisdiction to proceed because objector had an adequate remedy at law by way of payment of taxes under protest and an action at law to recover them. The cause was dismissed without prejudice to objector's right to bring the action at law.
Objector paid in full the 1972 real estate taxes levied upon the 12 parcels and simultaneously delivered written protests to the Cook County collector (Ill. Rev. Stat. 1973, ch. 120, pars. 675, 716), which set forth the amount of taxes paid and alleged that the tax rates and assessed valuation upon which they were based were illegal and void. Pursuant to the Illinois Revenue Act of 1939, objector brought suit by properly filing objections with the Circuit Court of Cook County. See People ex rel. Thompson v. Clark (1975), 34 Ill. App.3d 228, 233, 338 N.E.2d 408, 410.
By stipulation of the parties, the testimony taken in the prior proceeding before the chancery court, together with additional proofs, were presented to the court for decision. In 1972, for taxation purposes, the county assessor assessed on high-rise apartment properties such as Mid-Continental Realty's at a rate of 40% of full fair market value. Such assessed valuation amounted to $22,526,997 for all 12 buildings. It thus appeared that the assessor using the 40% rate of assessment, determined the full fair market value of the properties at approximately $56,000,000.
The objector contested this valuation amount and presented appraisers *838 Enright and Strobeck who testified that the properties were worth substantially less. The appraisers used substantially the same capitalization rate and viewed the same raw documentation as to income and expenses. Appraiser Enright gave his opinion as to the value of 11 of the 12 buildings. Enright included as an expense substantial ground rent payments attributed to the objector's properties at four of the 12 locations. Appraiser Strobeck likewise included ground rent payments as an expense.
The trial court found that the inclusion of such ground rent expenses improperly reduced the amount of net income which, under the income approach to valuation, is capitalized in order to gain the present worth of the projected future income flow generated by the property. The trial court also found that the appraisers had "in effect * * * claimed 14 months tax expenses as a deduction against one year's income." The appraisals put forward by the objector thus substantially underestimated the value of the properties because of the inclusion of improper expenses.
The trial court quantified such errors in a table which accompanied its opinion. These "revised appraisals" which reflect the inclusion of the amount of valuation excluded by the objector's appraisers, show an increase of approximately $4.5 million in value. When this addition is added to the base valuations shown for the objector's appraisers Enright and Strobeck, the aggregate value of the properties is at least $50 to $51 million according to the objector's own evidence. The trial court thus found that there was insufficient evidence of either overvaluation or constructive fraud.
The court rejected objector's arguments that the assessment ratio applied to rental residential properties by the county assessor, and the classification scheme upon which that ratio was based, invidiously discriminated against objector and apartment dwellers generally in violation of the equal protection clauses of the Federal and State constitutions, and the reasonable classification and uniformity provisions contained in article IX, section 4 of the Illinois Constitution of 1970. The court additionally held that the methods used by the county assessor in determining the assessed values of objector's properties were not arbitrary and capricious, and that the assessed valuations were thus not constructively fraudulent as alleged by objector. Therefore, the court ruled that Mid-Continental's evidence was insufficient to sustain their complaint against the collector and entered judgment for the collector. Mid-Continental Realty Corporation brings this appeal from the judgment of the circuit court.
 1 Mid-Continental Realty initially contends that the classification system employed by the assessor in 1972 was "de facto classification" totally lacking in legal effect. However, in 1972 the Cook County Assessor, without first securing authority from the County Board, *839 possessed the power to classify real property for the purposes of taxation, absent enabling legislation passed by the General Assembly. (Ill. Const. 1970, art. IX, § 4(b).) In La Salle National Bank v. County of Cook (1974), 57 Ill.2d 318, 312 N.E.2d 252, a similar argument was raised and rejected. The court looked to section 4(b) of article IX of the 1970 Constitution providing:
"Subject to such limitations as the General Assembly may hereafter prescribe by law, counties with a population of more than 200,000 may classify or to continue to classify real property for purposes of taxation." (Emphasis added.) (Ill. Const. 1970, art. IX, § 4(b).)
The italicized language was construed by the supreme court as authorizing the continuance of classification by the assessor in Cook County. The authority is, however, subject to such limitations as the General Assembly may prescribe by law. The General Assembly prescribed limitations on this authority in Public Act 78-700 by adding section 20a to the Revenue Act of 1939.
"Where real property is classified for purposes of taxation in accordance with Section 4 of Article IX of the Constitution and with such other limitations as may be prescribed by law, such classification must be established by ordinance of the county board. If not so established, the classification is void." (Ill. Rev. Stat. 1973, ch. 120, par. 501a.)
The effective date of the act was January 1, 1974, and the amendatory act also provided: "Nothing in this Act shall be construed to impair the validity of assessments made or taxes imposed prior to the effective date of the Act." 57 Ill.2d 318, 328, 312 N.E.2d 252, 258.
We reach the same conclusion stated by the supreme court in finding that "[t]he assessments based upon classifications of real property made by the Cook County assessor without action by the county board are valid and the complaint * * * was properly dismissed." (57 Ill.2d 318, 328, 312 N.E.2d 252, 258. See also People ex rel. Kutner v. Cullerton (1974), 58 Ill.2d 266, 319 N.E.2d 55.) In light of the supreme court's decisions in La Salle and Kutner it is clear that the system of classification employed by the assessor in 1972 was de jure.
 2-4 It is settled law that adoption of the Illinois Constitution of 1970 has not altered the rule that Illinois courts will not review the assessed valuations arrived at by local assessing bodies absent proof of actual or constructive fraud. La Salle National Bank v. County of Cook (1974), 57 Ill.2d 318, 328-30, 312 N.E.2d 252, 255.
"The law presumes that in fixing the value of the property the taxing authorities have properly discharged their duties and that the tax is just. (People v. Millard, 307 Ill. 556.) One objecting to the valuation placed upon his property by the taxing body has the *840 burden of proving, by clear and convincing evidence, a fraudulent overvaluation, (People v. Millard, supra; People v. Elmwood Cemetery Co. 317 Ill. 547;) and it is not sufficient to prove a mere over-valuation, (People v. Norton, 358 Ill. 272,) but the evidence must establish that such excess valuation is the result of some improper, corrupt or illegal motive on the part of the assessing authorities or is so grossly excessive as to create a constructive fraud. (Sanitary District v. Young, 285 Ill. 351.)" (People ex rel. McDonough v. Chicago Union Lime Works Co. (1935), 361 Ill. 304, 308, 198 N.E. 1, 3.)
The burden of the objector, then, is to prove by clear and convincing evidence that the assessment is constructively fraudulent. We find Mid-Continental Realty has failed to meet this burden.
In the instant case, Mid-Continental presented the testimony of two qualified real estate appraisers, Enright and Strobeck, who testified that the income approach to value was the only relevant approach in determining the fair market value of the buildings, and that in their respective opinions, the appropriate rate at which the net income was to be capitalized was 9 3/4% and 10%. The same income data used by Mid-Continental's appraisers was also submitted to the assessor for his use in determining the quadrennial assessment. Mr. Johnson, an equally qualified appraiser on the staff of the assessor, agreed that the income approach was relevant and in fact the income approach was used by the assessor, with the net income being capitalized at 9 1/2%. The assessor's target assessment ratio was 40% of fair market value, the same ratio the assessor was employing with respect to other high-rise apartment buildings and commercial and industrial properties subject to quadrennial assessment in 1972.
Despite the fact that all three appraisers were using the same income and expense data, the same approach to value and with only a narrow difference in capitalization rates, they arrived at widely differing results. These discrepancies are all attributable to the four expense factors which were disallowed by the assessor.
First, four of the buildings were subject to ground leases whose ground rent the assessor refused to allow as an expense in determining the net income to capitalize. Second, Mid-Continental's appraisers deducted the accrued real estate taxes on the books as an expense. The assessor ignored taxes as an expense, but added a factor based upon 40% of the last ascertainable effective tax rate into his capitalization rate. He thus capitalized net income before real estate taxes at a rate of 14.5%.
Third, the assessor included income from concessions, laundry machines and other items as part of gross income. Appraiser Strobeck did also, whereas Enright did not. The assessor and Enright used actual reported gross income, whereas Strobeck adjusted gross income to allow *841 for a vacancy factor. Enright used actual expenses, whereas Strobeck adjusted the expenses of several buildings to allow for a typical management fee. The assessor allowed expenses as a percentage of gross income, the percentage being determined by him from a survey of buildings in the area of Mid-Continental's property and varying according to the age and location of the building.
Finally, Mid-Continental's appraisers allowed as an expense a book accrual for the replacement of personal property; the assessor refused to allow the book accruals on the ground that the typical owner did not keep his books in that manner, nor set aside a cash reserve for that purpose, but expended funds for personal property replacements as they occurred.
The trial judge was correct in not allowing ground rent as an expense of the building. Under the Revenue Act (Ill. Rev. Stat. 1973, ch. 120, pars. 482-811), it is the fair cash value of the property as a whole which is to be assessed, not the value of the respective interests therein, and Mid-Continental's appraisers ignored the value of the income reserved to the owner of the fee in arriving at their opinion of the overall value of the premises. The value of property for assessment purposes is to be ascertained as if unencumbered by the ground lease. Springfield Marine Bank v. Property Tax Appeal Board (1970), 44 Ill.2d 428, 430-31, 256 N.E.2d 334, 336.
Similarly the trial judge correctly found that Mid-Continental's appraisers erred in accepting the accruals for real estate taxes shown on their books as their actual real estate tax expense attributable to the year 1972. The trial judge quantified such errors in a table which showed the accruals exceeding the actual taxes levied for the year 1971 and paid in 1972 by about 15%, and in effect resulted in a claim of 14 months of tax expense as a deduction against one year's income.
 5 The remaining factors which led to the variance between the values arrived at by the assessor and the other appraisers are a product of the different techniques used in the treatment of income and expense items. The methods used by the assessor have not been shown to be either arbitrary or capricious. The use of the actual income by the assessor was the same method used by Enright, even though Strobeck's technique of adjusting for a vacancy factor and management fees is probably more sophisticated. The inclusion of miscellaneous income by the assessor is corroborated by Strobeck himself. The allowance by the assessor of a percentage of gross income for expenses is sound from the viewpoint of an attempt to achieve uniformity in the assessment of similar property of similar age and location. Therefore we are unable to find that the assessor abused his discretion or made obviously improper judgments in the treatment of the disputed items. Nor is the opinion of value arrived at by the assessor and then debased to 40% for assessment purposes so grossly *842 disparate to the opinion of value arrived at by Mid-Continental's appraisers as to warrant the intervention of the court in the assessment process. The assessment is neither constructively fraudulent nor erroneous.
Mid-Continental next contends that the assessor invidiously discriminated against objector in violation of the equal protection clauses of the Federal and State constitutions and in violation of the reasonableness of classification and uniformity provisions of article IX, section 4(b) of the Illinois Constitution of 1970. Objector specifically claims such discrimination results from the classification of high-rise apartment buildings as "rental residential" and assessing them in concert with "commercial" and "industrial" properties, at 40% of their fair market value, while simultaneously assessing "single family residences," "condominiums" and other commercially operated apartment buildings of less than six units at 20%-22% of their fair market value.
 6 However, State and municipal authorities have traditionally been given broad leeway in drawing classifications defining the subject of taxation. (Lehnhausen v. Lake Shore Auto Parts Co. (1973), 410 U.S. 356, 35 L.Ed.2d 351, 93 S.Ct. 1001; People ex rel. Hamer v. Jones (1968), 39 Ill.2d 360, 366, 235 N.E.2d 589, 591.) When subjected to an equal protection challenge, a legislative scheme of taxation has been accorded a presumption of constitutionality, and the burden of establishing its invalidity is imposed on the party assailing it. (Jacobs v. City of Chicago (1973), 53 Ill.2d 421, 425, 292 N.E.2d 401, 404.) Tax classifications, however, will violate the equal protection clause only if found to be arbitrary or capricious, i.e., lacking a rational basis. (Allied Stores of Ohio, Inc. v. Bowers (1959), 358 U.S. 522, 3 L.Ed.2d 480, 79 S.Ct. 437; Fiorito v. Jones (1968), 39 Ill.2d 531, 236 N.E.2d 698; Ohio Oil Co. v. Wright (1944), 386 Ill. 206, 53 N.E.2d 966.) Mid-Continental has failed to establish either criteria.
 7 On the contrary, testimony given by the assessor as to adoption of the 40% assessment level reveals a rational basis underlying it. The assessor noted: (1) the ability of the owner of industrial, commercial and multiunit apartment buildings to pass along the tax burden to their customers or tenants; and (2) the 40% level was the appropriate level of assessment of these types of properties prior to 1972. As the trial judge found in his memorandum opinion:
"The Assessor could properly consider the difference in the purposes for which the property is owned to support differential levels of assessment upon the owners of property. The Assessor could also properly consider the social advantages which might accrue to the community from encouraging the ownership of residential real estate for use by a differential level of assessment between using owners and tenants. There are sufficient differences *843 between the owners of residential property for use and [Mid-Continental] to warrant a finding that the classification system used by the Assessor in 1972 was reasonable and thus permissable under the 1970 Constitution."
Accordingly, we affirm the lower court's finding that objector's evidence was insufficient to sustain its complaint against the county collector and its entry of judgment in his favor.
Judgment affirmed.
McGLOON and O'CONNOR, JJ., concur.