Under Supreme Court Rule 367 a party has 21 days after the filing

of the opinion to request a rehearing. Also, opinions are subject

to modification, correction or withdrawal at anytime prior to

issuance of the mandate by the Clerk of the Court. Therefore,

because the following slip opinion is being made available prior to

the Court's final action in this matter, it cannot be considered

the final decision of the Court. The official copy of the following

opinion will be published by the Supreme Court's Reporter of

Decisions in the Official Reports advance sheets following final

action by the Court.

                                

           

           Docket No. 79750--Agenda 7--September 1996.

           THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v.

                 CHARLES M. DEAN, Appellant.

               Opinion filed February 20, 1997.

                                

             JUSTICE BILANDIC delivered the opinion of the court:

             The defendant was charged by information in Warren

           County with committing aggravated criminal sexual assault (720

           ILCS 5/12--14(b)(1) (West 1992)) of his stepdaughter, E.C.,

           between February 1, 1992, and October 6, 1992. The charge

           specifically alleged that the defendant, who was 17 years of age

           or older, knowingly committed an act of sexual penetration upon

           E.C., who was under 13 years of age when the act was

           committed, by placing his fingers in E.C.'s vagina. After

           waiving his right to a trial by jury, the defendant was convicted

           at a bench trial of aggravated criminal sexual assault and

           sentenced to 30 years' imprisonment. The appellate court, with

           one justice dissenting, affirmed the defendant's conviction and

           sentence. No. 3--93--0659 (unpublished order under Supreme

           Court Rule 23). We allowed the defendant's petition for leave

           to appeal (155 Ill. 2d R. 315), and now reverse the judgments

           of the appellate and circuit courts and remand for a new trial.

           

                        FACTS

             Prior to trial, the trial court conducted an in camera

           competency hearing of the five-year-old victim, E.C. The court

           determined that E.C. was competent to testify. The State began

           its case by calling E.C. as its first witness. After a few

           background questions, E.C. became upset and started crying

           when asked about the defendant. E.C. then refused to respond

           to the State's questions. The court found that E.C. was not

           competent to testify at that time; however, the court reserved its

           ruling on the State's motion to obtain E.C.'s testimony by

           closed circuit television.

             The State proceeded with its case by calling Sherry Dean,

           E.C.'s mother. Sherry testified that between July and November

           of 1992 she lived in a second-floor apartment of a three-story

           building at 509 East Broadway in Monmouth, Illinois, with the

           defendant and her four children. She married the defendant on

           October 10, 1992.

             Rebecca Harrell, a mental health therapist at the Spoon

           River Mental Health Center in Monmouth, next testified for the

           State. Harrell testified that she first interviewed E.C. on

           November 3, 1992. E.C. was referred by the Illinois Department

           of Children and Family Services (DCFS) for assessment and

           possible treatment for alleged sexual abuse. According to

           Harrell, E.C. told her that she was living with her grandmother

           because "nasty Charlie hurted [sic] me." During their next

           session, E.C. stated to Harrell that her mother told her not to tell

           anyone what the defendant had done to her. During subsequent

           sessions, E.C. demonstrated her ability to identify body parts.

           E.C., through the use of an anatomically correct female doll,

           showed Harrell how the defendant had put his hand on her "pee

           pee" and stuck two fingers inside her and wiggled them around

           so that it hurt. Harrell also testified that E.C. indicated to her

           that the incident occurred on the bed in her mother's bedroom,

           and that after the defendant touched her genital area she tried to

           stick him with a fork. According to Harrell, E.C. did not make

           any allegations of sexual abuse against anyone else other than

           the defendant.

             The next witness called by the State was Cherry

           Richardson, an investigator for DCFS. Richardson testified that

           she and police lieutenant David Brooks interviewed E.C. in

           response to an October 22, 1992, hotline report of possible

           abuse. During a series of interviews, E.C. told her that the

           defendant had touched her in her "private area." E.C.

           demonstrated with an anatomically correct female doll how the

           defendant had put his fingers into her vagina and moved them

           around. Again, E.C. stated that it "hurted." Richardson next

           testified that, on January 8, 1993, she and Lieutenant Brooks

           took E.C. for a drive to determine where the assault had taken

           place. When they approached the vicinity of 509 East

           Broadway, the location of the apartment building where E.C.

           used to live with her mother and the defendant, E.C. indicated

           that the incident did not happen upstairs or downstairs, but in

           the middle. When asked if the abuse had occurred at the

           apartment on Broadway, E.C. indicated that it occurred at

           "Jimbo's." E.C. referred to her biological father, James C., as

           "Jimbo." Richardson and Lieutenant Brooks took E.C. to James

           C.'s apartment, located at 405 South Main Street. Once inside

           the apartment, E.C. pointed to a rollaway bed in the corner of

           James C.'s bedroom, which she identified as "mommie's."

           James C. later testified that the bed had been at Sherry's

           apartment on Broadway until the children were removed from

           her care sometime in November of 1992.

             Also testifying as a witness for the State was Dr. Sun Park,

           a pediatrician at Community Memorial Hospital in Monmouth.

           On October 27, 1992, Dr. Park examined E.C. Prior to the

           examination, E.C. told Dr. Park that the defendant had hurt her.

           After an examination of E.C., Dr. Park testified that E.C.'s

           genitalia displayed a widened vestibule and was missing a

           membrane usually found present in young girls. In Dr. Park's

           opinion, E.C.'s condition could have been caused by forcible

           digital penetration, and had probably occurred at least a few

           days prior to the examination.

             At the close of its case in chief, the State recalled E.C. as

           a witness. After responding to some preliminary questions, E.C.

           was asked if anything happened between her and the defendant.

           E.C. refused to respond in the defendant's presence. The State

           then renewed its motion to take E.C.'s testimony by closed

           circuit television. The court granted the State's motion over the

           defendant's objection.

             At the closed circuit television proceeding, E.C. testified

           that she currently lives with her father, "Jimbo." However, she

           used to live with her mother, her siblings and the defendant.

           According to E.C., while she lived at her mother's house, the

           defendant came into her bedroom and put his fingers into her

           "private" and moved them around and hurt her. E.C. stated that

           she told both of her parents that the defendant touched her. E.C.

           also testified on cross-examination that the defendant had cut off

           the heads of puppies with a knife. She saw blood on the counter

           and the floor.

             After the State concluded its case in chief, the defense

           called Sherry Dean, E.C.'s mother. Sherry testified that the

           puppy incident, referred to by E.C., had occurred in Iowa in

           1991, while she was married to her former husband, John

           Holden. She explained that she left the home after an argument.

           When she and the children returned, they found that Holden had

           hung some puppies in a tree, cut them open, and placed them on

           the kitchen counter. There was blood all over the kitchen.

           Sherry testified that she and the defendant moved into the

           apartment on Broadway in May of 1992. Sherry denied that E.C.

           told her that the defendant had hurt or molested her. James C.

           also testified that E.C. never told him about being sexually

           abused or hurt by the defendant.

             The defendant had waived his right to a jury trial. After

           considering the evidence, the trial court found the defendant

           guilty as charged. The trial court subsequently sentenced the

           defendant to 30 years' imprisonment.

             The defendant appealed his conviction and sentence, which

           a majority of the appellate court affirmed. The majority rejected

           the defendant's argument that he is entitled to a new trial

           because E.C.'s testimony on closed circuit television was

           admitted pursuant to the Child Shield Act (725 ILCS 5/106B--1

           (West 1992)), which was subsequently declared unconstitutional

           in People v. Fitzpatrick, 158 Ill. 2d 360 (1994). The majority

           recognized that the Child Shield Act was found to be

           unconstitutional in Fitzpatrick because it violated a defendant's

           state constitutional right to meet witnesses "face to face."

           Nevertheless, the majority noted that during the pendency of the

           defendant's appeal, the Illinois Constitution was amended and

           the Child Shield Act reenacted. Consequently, the majority

           determined that the reenacted Child Shield Act would allow for

           the admission of E.C.'s testimony by closed circuit television on

           retrial. The majority then reasoned that any error in admitting

           E.C.'s testimony in the first trial had been "cured by the

           subsequent legislative activity and rendered harmless beyond a

           reasonable doubt in this case."

             A dissenting justice disagreed with the majority's

           conclusion that the subsequent amendment to the confrontation

           clause of the Illinois Constitution and reenactment of the Child

           Shield Act cured the error committed at the defendant's trial. He

           argued that retroactively applying the law as it now exists to the

           defendant's case violates the state and federal constitutional

           prohibitions against ex post facto laws (Ill. Const. 1970, art. I,

           §16; U.S. Const., art. I, §§9, 10).

           

                      ANALYSIS

              I. Right to Confrontation

             The defendant argues that he was deprived at trial of his

           constitutional right to a face-to-face confrontation with the

           victim, E.C., whom the trial court permitted to testify outside

           the defendant's presence by closed circuit television pursuant to

           the Child Shield Act (725 ILCS 5/106B--1 (West 1992)). The

           defendant contends that at the time he allegedly committed the

           offense, and at the time of his trial, section 8 of article I of the

           Illinois Constitution (Ill. Const. 1970, art. I, §8) expressly

           guaranteed a criminal defendant the right to confront witnesses

           face to face. In support of his argument, the defendant relies on

           this court's decision in People v. Fitzpatrick, 158 Ill. 2d 360

           (1994). According to the defendant, the appellate court erred by

           failing to apply the Fitzpatrick decision to his case. The

           defendant therefore requests that we reverse the decision of the

           appellate court, reverse his conviction and grant him a new trial.

           

              A. People v. Fitzpatrick

             The first issue before this court is whether our decision in

           Fitzpatrick should be applied to the defendant's case. In

           Fitzpatrick, the defendant was charged with seven counts of

           aggravated criminal sexual assault against four minors. The

           State moved pursuant to the Child Shield Act (Ill. Rev. Stat.

           1991, ch. 38, par. 106B--1) for an order allowing the four minor

           victims to testify outside of the defendant's presence by closed

           circuit television. The Child Shield Act allowed child victims of

           certain enumerated sexual crimes to testify outside the

           courtroom by closed circuit television. Ill. Rev. Stat. 1991, ch.

           38, par. 106B--1(a)(1). Pursuant to the Act, a defendant

           remained in the courtroom but was able to communicate with

           his attorney, who was in the room where the child was

           testifying. Ill. Rev. Stat. 1991, ch. 38, pars. 106B--1(b)(2),

           (b)(3). The trial court in Fitzpatrick declared the Child Shield

           Act unconstitutional. On direct appeal, this court determined that

           the confrontation clause of the Illinois Constitution (Ill. Const.

           1970, art. I, §8) unambiguously guaranteed a criminal defendant

           the right to meet a witness face to face. Fitzpatrick, 158 Ill. 2d

           at 365. In reaching this holding, the court distinguished the "face

           to face" language of the Illinois Constitution's confrontation

           clause (Ill. Const. 1970, art. I, §8) from the "right to be

           confronted" language contained in the United States

           Constitution's confrontation clause (U.S. Const., amend. VI).

           Fitzpatrick, 158 Ill. 2d at 367. We found that a witness who is

           examined by closed circuit television does not provide the

           defendant with the face-to-face confrontation guaranteed by the

           plain language of the Illinois Constitution's confrontation clause.

           Fitzpatrick, 158 Ill. 2d at 367-68. Accordingly, this court

           declared the Child Shield Act to be unconstitutional because it

           violated the confrontation clause of the Illinois Constitution.

           Fitzpatrick, 158 Ill. 2d 360.

             The defendant here contends that the appellate court erred

           by failing to apply this court's decision in Fitzpatrick to his

           case. Our Fitzpatrick opinion was filed on February 17, 1994,

           after the defendant was convicted and while his direct appeal

           was pending before the appellate court. We must therefore

           determine whether our decision in Fitzpatrick applies

           retroactively to the defendant's case.

             The standard for applying judicial opinions retroactively

           was set forth in People v. Erickson, 117 Ill. 2d 271 (1987). In

           Erickson, this court held that judicial opinions announcing new

           constitutional rules applicable to criminal cases are retroactive

           to all cases pending on direct review at the time the new

           constitutional rule is declared. Erickson, 117 Ill. 2d at 288,

           citing Griffith v. Kentucky, 479 U.S. 314, 328, 93 L. Ed. 2d 649,

           661, 107 S. Ct. 708, 716 (1987). More specifically, retroactivity

           is triggered when two factors are present: (1) the case to which

           the new rule is to be applied was not final or was pending on

           direct review when the rule was declared, and (2) the rule to be

           applied retroactively is of constitutional dimension. Erickson,

           117 Ill. 2d at 289; see also People v. Gersch, 135 Ill. 2d 384,

           393 (1990); People v. Shields, 143 Ill. 2d 435, 442 (1991). Both

           of these factors are present in the instant case. The defendant's

           case was pending on direct review before the appellate court

           when this court rendered its decision in Fitzpatrick. Second, this

           court's ruling in Fitzpatrick is clearly a new rule of

           constitutional dimension. Although the 1970 Illinois

           Constitution's confrontation clause included the language "face

           to face," this court in Fitzpatrick first announced that a

           defendant was deprived of his right to confrontation when he

           was unable to confront witnesses face to face. Thus, pursuant to

           the above standard, we hold that the Fitzpatrick decision applies

           retroactively to the defendant's case.

             Parenthetically, we note that Fitzpatrick should also be

           applied retroactively to cases pending on direct appeal given its

           determination that the Child Shield Act was unconstitutional. In

           People v. Gersch, 135 Ill. 2d 384 (1990), this court addressed

           whether a decision finding a statute unconstitutional should be

           applied retroactively to a case that was pending on direct

           review. We stated: "To hold that a judicial decision that declares

           a statute unconstitutional is not retroactive would forever

           prevent those injured under the unconstitutional legislative act

           from receiving a remedy for the deprivation of a guaranteed

           right." Gersch, 135 Ill. 2d at 397. We agree with and adopt this

           rationale in the present case.

           

             B. Constitutional Amendment

             The State argues that the defendant is not entitled to the

           retroactive application of Fitzpatrick because that decision has

           "lost all force and effect." In making this argument, the State

           points to the following events which arose in response to our

           decision in Fitzpatrick.

             Shortly after the filing of the Fitzpatrick opinion on

           February 17, 1994, the Illinois General Assembly proposed an

           amendment to the Illinois Constitution's confrontation clause.

           1994 Ill. Laws 3148 (Senate Joint Resolution Constitutional

           Amendment 123). The proposed constitutional amendment

           deleted the "face to face" language from the confrontation clause

           and replaced it with language giving the accused the right "to be

           confronted with the witnesses against him or her." 1994 Ill.

           Laws 3148 (Senate Joint Resolution Constitutional Amendment

           123). The legislative debates surrounding the proposed

           constitutional amendment indicate that the amendment was

           intended to reverse the effects of the Fitzpatrick decision and to

           change the language of the confrontation clause in the Illinois

           Constitution to conform with the language of the confrontation

           clause in the United States Constitution. 88th Ill. Gen. Assem.,

           House Proceedings, April 20, 1994, at 51; 88th Ill. Gen. Assem.,

           Senate Proceedings, April 14, 1994, at 101-02; 88th Ill. Gen.

           Assem., House Proceedings, November 30, 1994, at 52. On

           November 8, 1994, Illinois voters approved the constitutional

           amendment, thereby changing the language of section 8 of

           article I of the Illinois Constitution. Ill. Const. 1970, art. I, §8,

           amended November 8, 1994; Illinois State Board of Elections,

           Official Vote Cast at the General Election on November 8,

           1994, at vii (1994). The Illinois legislature then repealed the

           Child Shield Act invalidated in Fitzpatrick (725 ILCS 5/106B--1

           (repealed by Pub. Act 88--674, §5, eff. December 14, 1994))

           and reenacted it in reliance on the newly amended constitutional

           provision. 1994 Ill. Laws 2666; 88th Ill. Gen. Assem., Senate

           Proceedings, December 1, 1994, at 77. The reenacted statute

           applies to prosecutions pending on or commenced on or after

           December 14, 1994. 725 ILCS 5/106B--5 (West Supp. 1995).

           The reenacted Child Shield Act is substantially the same as the

           version declared unconstitutional in Fitzpatrick. It allows young

           victims of certain listed sexual crimes to testify by closed circuit

           television outside the presence of the defendant. 725 ILCS

           5/106B--5 (West Supp. 1995). All of these aforementioned

           events occurred while the defendant's case was pending on

           appeal before the appellate court.

             In view of the preceding circumstances, the State insists that

           Fitzpatrick has been "legislatively overruled or superseded,"

           such that it is no longer controlling precedent. According to the

           State, Fitzpatrick should not be applied retroactively to the

           defendant's case because it is an invalid decision given its

           reliance on the former language of section 8 of article I. The

           State asserts that the appellate court properly utilized the

           constitutional amendment and the reenacted Child Shield Act to

           cure any error that may have arisen at the defendant's trial.

             We cannot agree with the State's position. In essence, the

           State is arguing that the constitutional amendment to the Illinois

           Constitution's confrontation clause be applied retroactively to

           the defendant's case. It is well established, however, that a

           constitutional provision or amendment operates prospectively

           from its effective date unless its language clearly indicates an

           intent to apply the provision or amendment retroactively. See

           Shreveport v. Cole, 129 U.S. 36, 43, 32 L. Ed. 589, 591-92, 9

           S. Ct. 210, 213 (1889); People ex rel. Kutner v. Cullerton, 58

           Ill. 2d 266, 270 (1974), citing City of Chicago v. Rumsey, 87 Ill.

           348, 357 (1877); accord State v. Lavazzoli, 434 So. 2d 321, 323

           (Fla. 1983); State v. Cousan, 1996 La. Lexis 3233 (La.

           November 25, 1996); Succession of Fragala, 680 So. 2d 1345,

           1348 (La. App. 1996); People v. Gornbein, 407 Mich. 330, 332,

           285 N.W.2d 41, 43 (1979); State ex rel. Moore v. Molpus, 578

           So. 2d 624, 643 (Miss. 1991); Kayden Industries, Inc. v.

           Murphy, 34 Wis. 2d 718, 731, 150 N.W.2d 447, 453 (1967); 16

           C.J.S. Constitutional Law §36 (1984); 16 Am. Jur. 2d

           Constitutional Law §65 (1979). This principle recognizes that a

           constitutional amendment may have a retroactive effect only "if

           such an intention is clearly expressed in the constitution." See

           Cullerton, 58 Ill. 2d at 270. No such intent was expressed in the

           constitutional amendment at issue here.

             Section 8 of article I, as amended in 1994, states that the

           accused in criminal prosecutions "shall have the right *** to be

           confronted with the witnesses against him or her." Ill. Const.

           1970, art. I, §8, amended November 8, 1994. This language

           does not clearly indicate an intention to apply retroactively the

           amended constitutional right to confrontation. Moreover, the

           schedule contained in the 1994 constitutional amendment

           proposed by the General Assembly does not indicate that a

           retroactive application was intended. The schedule contained in

           that resolution stated as follows: "This Constitutional

           Amendment takes effect upon approval by the electors of this

           State," which date was November 8, 1994. 1994 Ill. Laws 3148

           (Senate Joint Resolution Constitutional Amendment 123). As

           further support for our finding that there was no intent to apply

           the constitutional amendment retroactively, we look to the form

           of ballot used in the November 1994 election to explain the

           proposed amendment to the voters. The form of ballot read:

           "This proposed amendment changes Article I, Section 8 of the

           Illinois Constitution regarding the rights of the accused in a

           criminal prosecution by replacing language giving the accused

           the right `to meet the witnesses face to face' with language

           giving the accused the right ` "to be confronted with the

           witnesses against him or her." ' " 1994 Ill. Laws 3096 (Senate

           Joint Resolution 181); George H. Ryan, Secretary of State, State

           of Illinois, Proposed Amendments to the Constitution of Illinois

           That Will Be Submitted to the Voters November 8, 1994, at 5

           (1994). The express language on the ballot thus did not express

           an intent to apply the constitutional amendment retroactively.

           Based on our examination of the foregoing provisions, we find

           no indication that the constitutional amendment which altered

           the scope of the right to confrontation was intended to apply

           retroactively. We therefore hold that this constitutional

           amendment has prospective application only and cannot be

           applied retroactively to the defendant's case. Accordingly, the

           defendant, who had a right to confrontation at trial and whose

           trial had been completed, cannot be deprived retroactively of his

           right to a "face to face" confrontation.

             We further note that fundamental fairness and justice dictate

           that the constitutional amendment to section 8 of article I not

           apply retroactively to the defendant's case. At the time of the

           defendant's trial, the Illinois Constitution conferred on him an

           express and unqualified right to "face to face" confrontation.

           When we held the Child Shield Act unconstitutional in

           Fitzpatrick, we declared that the procedure allowed by that

           statute violated this constitutional right. Because the procedure

           found to be unconstitutional in Fitzpatrick was also employed

           during the defendant's trial, his then-existing constitutional right

           was violated. The State argues that the subsequent amendment

           to the constitution can be applied retroactively to cure this error.

           The fortuity of circumstances on which the State now relies,

           however, cannot validate retroactively what was undeniably an

           unconstitutional trial procedure when it occurred. The defendant

           is entitled to a trial which vindicates his constitutional right to

           "face to face" confrontation. We therefore find that retroactive

           application of this constitutional amendment to the defendant's

           case would result in manifest injustice because the defendant

           would be deprived of a fundamental constitutional right which

           was guaranteed to him at the time of his trial.

             Based on the foregoing analysis, we hold that the

           amendment to section 8 of article I of the Illinois Constitution,

           effective November 8, 1994, and the subsequently reenacted

           Child Shield Act do not apply retroactively to the defendant's

           case. Consequently, at the time of his trial, the defendant was

           entitled to meet witnesses face to face. Fitzpatrick, 158 Ill. 2d

           360. The defendant was deprived of that constitutional right

           when the victim, E.C., testified by closed circuit television.

           Moreover, we conclude that the appellate court erred in applying

           the constitutional amendment and reenacted Child Shield Act

           retroactively to cure the error of admitting E.C.'s testimony via

           closed circuit television.

           

                 II. Harmless Error

             Having determined that the defendant was deprived in his

           trial of his constitutional right to "face to face" confrontation,

           we next address whether that error was harmless. The appellate

           court disposed of this case on the basis that the constitutional

           error committed at trial had been rendered harmless by

           "subsequent legislative activity." We reject this rationale because

           it does not conform to the standard for determining whether a

           constitutional error is harmless. A constitutional error can be

           deemed harmless error only if it is proven beyond a reasonable

           doubt that the error did not contribute to the defendant's

           conviction. People v. Childs, 159 Ill. 2d 217, 228 (1994), citing

           Chapman v. California, 386 U.S. 18, 23-24, 17 L. Ed. 2d 705,

           710-11, 87 S. Ct. 824, 827-28 (1967); Shields, 143 Ill. 2d at

           446; People v. Coleman, 129 Ill. 2d 321, 341 (1989); People v.

           Johnson, 116 Ill. 2d 13, 28 (1987). Essentially, then, the issue

           is whether the defendant would have been convicted regardless

           of the error.

             With this principle in mind, we examine whether E.C.'s

           testimony via closed circuit television contributed to the

           defendant's conviction. The State contends that the confrontation

           error is harmless because even in the absence of E.C.'s

           testimony, the defendant would have been convicted based on

           independent credible evidence of the defendant's guilt presented

           at trial. We disagree. First, we point out that in announcing the

           guilty finding, the trial judge, who acted as the finder of fact,

           stated that the "bottom line" in finding the defendant guilty was

           that he believed E.C.'s testimony. More specifically, the trial

           judge stated:

               "The only direct evidence in this case as to the offense

                          charged comes from [E.C.], the victim, a five year old

                          female child. Most of the evidence that has been

                          presented to me in this case has to do with whether or

                          not I should believe what [E.C.] has told me, and that

                          is really the bottom line in this case. *** I believe

                          [E.C.], and that is the bottom line."

           These comments demonstrate that the trial judge relied heavily

           on E.C.'s testimony in finding the defendant guilty.

             The record also reveals that E.C. likely would not have

           testified without the use of closed circuit television. The State

           was unsuccessful on two occasions when it attempted to elicit

           testimony from E.C. in the defendant's presence. Given the

           importance of E.C.'s testimony and the fact that the trial judge

           placed great weight on it in reaching his decision to convict the

           defendant, we cannot conclude beyond a reasonable doubt that

           the defendant would have been convicted without E.C.'s

           testimony. We therefore find that the error in admitting E.C.'s

           testimony by closed circuit television contributed to the trial

           judge's decision to convict the defendant. The error therefore

           was not harmless beyond a reasonable doubt. Accordingly, we

           hold that the defendant's conviction must be reversed and the

           cause remanded to the circuit court for a new trial.

           

                     III. Remand

             We must next consider what law will apply on remand. On

           remand, the defendant claims that fundamental fairness requires

           that he retain his right to face-to-face confrontation as it existed

           at his first trial. The defendant relies on People v. Reddick, 123

           Ill. 2d 184 (1988), in support of his argument. In Reddick, the

           defendant was granted a new trial because the jury received

           improper instructions regarding the burden of proof. In

           addressing additional trial errors, this court considered the

           defendant's claim that the trial court erred in preventing the

           defendant from impeaching a prosecution witness with evidence

           of a prior felony conviction. The trial court excluded the

           impeachment evidence pursuant to People v. Montgomery, 47

           Ill. 2d 510, 516 (1971), which held that a witness cannot be

           impeached by a prior conviction if more than 10 years have

           elapsed since the date of the witness' conviction or the date of

           the witness' release from confinement, whichever is later.

           Reddick, 123 Ill. 2d at 202-03. The trial court in Reddick,

           however, miscalculated whether 10 years had elapsed and thus

           erroneously applied the Montgomery rule to exclude the prior

           conviction. Reddick, 123 Ill. 2d at 202. This court determined

           that the defendant's initial trial was held within 10 years of the

           prosecution witness' release from prison for the conviction.

           Reddick, 123 Ill. 2d at 203. Consequently, the Montgomery rule

           did not bar admission of the prior conviction for impeachment

           purposes at that trial. Nevertheless, this court noted that, under

           this rule, on retrial the prosecution witness' prior conviction will

           not be admissible for impeachment because the 10-year limit set

           forth in Montgomery will have lapsed. As a result, this court

           refused to apply the 10-year provision of the Montgomery rule

           on remand to exclude the evidence. We held that fundamental

           fairness required that the defendant be allowed to impeach the

           witness in his new trial in the same manner that the defendant

           should have been permitted to impeach him at the initial trial.

           Reddick, 123 Ill. 2d at 203.

             Here, the defendant argues that a similar principle of

           fairness dictates that his retrial be conducted pursuant to the

           face-to-face confrontation clause as it should have been applied

           at his first trial. We agree and hold that fundamental fairness

           requires that the defendant be allowed to confront witnesses face

           to face at his retrial. This result seems particularly just given

           that the defendant was deprived of a fundamental constitutional

           guarantee at his first trial.

             As a final matter, we note that double jeopardy principles

           do not bar the State from proceeding against the defendant in a

           new trial. After thoroughly reviewing the evidence, we find it to

           have been sufficient to support the defendant's conviction. As

           such, there is no impediment to a new trial. See People v. Hope,

           116 Ill. 2d 265, 279 (1986); People v. Taylor, 76 Ill. 2d 289,

           309 (1979). We, however, in no manner imply that we have

           made a finding as to the defendant's guilt that would be binding

           on retrial. People v. McDonald, 125 Ill. 2d 182, 202 (1988).

           

                     CONCLUSION

             For the reasons stated above, we reverse the judgments of

           the appellate and circuit courts. We therefore reverse the

           defendant's conviction and remand for a new trial consistent

           with the views expressed in this opinion.

           

           Appellate court judgment reversed;

                   circuit court judgment reversed;

                      cause remanded with directions.